Robin Rainey ELY, Individually and as Representative of the Estate of Paul J. Ely, and Next Friend of Tiffany Dawne Ely and Cheyenne Haley Ely, and Robert C. Ely and Mary Jane Ely, Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

No. 06–95–00081–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 16, 1996.

Decided Aug. 1, 1996.

Gregory P. Grajczyk, Bruce A. Harbour, Boyland, Smith & Harris, Longview, for Appellants.

Carol E. Doonan, S. Vance Wittie, Strasburger & Price, Dallas, for Appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

GRANT, Justice.

This is a wrongful death case in which Paul J. Ely, a deputy sheriff of Gregg County, Texas, was struck and killed by Darrell Durham, a mechanic for Dow Oldsmobile Cadillac, Inc. (hereinafter "Dow"). Ely's wife, Robin Ely (hereinafter "Ely," referring to her as an individual and as a representative of the estate of Paul J. Ely), brought a wrongful death suit against Durham, Dow, and General Motors. The trial court severed the claims against General Motors and granted General Motors' motion for summary judgment. Ely appeals.

On March 18, 1994, Durham was test-driving a Cadillac El Dorado on FM Road 2276 after performing warranty service work on the vehicle. The El Dorado, which had been manufactured by General Motors, had been brought to Dow for warranty service work.[1] The owner had complained that the wheels of the Cadillac vibrated when it was travelling at speeds greater than eighty-five miles per hour.[2]

While he was test-driving the Cadillac, Durham lost control of the vehicle and careened off the road and into the yard of Paul Ely. Ely, who was working in his yard with his two young daughters, Tiffany Dawne and Cheyenne Haley, was hit by the Cadillac and killed.

■ By her sole point of error, Ely contends that the trial court erred in rendering summary judgment for General Motors because the motion and the supporting evidence were insufficient to establish the absence of a necessary element of each of its causes of action as a matter of law. Summary judgment is proper when no genuine issue exists on any material fact and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c).

The Texas Supreme Court has determined (1) that the movant for summary judgment has the burden of showing the trial court that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(2) that in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

(3) that every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see also Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994) (applying the *Nixon* standards). In reviewing a grant of summary judgment to a defendant, the relevant issue on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156, 157 (Tex.App.—Texarkana 1994, writ denied); *Parrish v. Brooks*, 856 S.W.2d 522, 524 (Tex.App.—Texarkana 1993, writ denied).

■ Ely first argues that the trial court erred in granting summary judgment for General Motors because there was a genuine issue of material fact as to the existence of an agency relationship between General Motors and Dow regarding the work of Darrell Durham, or alternatively, between General Motors and Darrell Durham.

---

1. All General Motors dealerships are required to conduct warranty service work regardless from whom the vehicle was purchased. Ely alleges that one reason General Motors maintains a network of dealerships is to honor its vehicles' warranties. Ely further alleges that General Motors controls the warranty work by controlling the training required for each mechanic, by setting the prices for warranty work, and by controlling the extent of the work performed under warranty.

2. Ely alleges that General Motors advertised that the Northstar-powered Cadillac could maintain a smooth ride while travelling at speeds in excess of 100 miles per hour.

This Court has previously held that a "person may be the servant of two employers at one time as to one act if the service to one does not involve an abandonment of the service to the other." *White*, 880 S.W.2d at 159 (citing RESTATEMENT (SECOND) OF AGENCY § 226 (1958)). If General Motors and Dow jointly controlled Durham's service, a jury could properly conclude that he was an employee or agent of General Motors when the accident occurred. *See White*, 880 S.W.2d at 159; *Gulf Oil Corp. v. Williams*, 642 S.W.2d 270, 272 (Tex.App.—Texarkana 1982, no writ).

The issue then becomes whether General Motors had the right to control Durham's work under the warranty. Ely argues the franchise agreement between General Motors and Dow demonstrates that General Motors had the right to control significant aspects of Dow's operations. The relevant provisions of the contract give General Motors the following rights:

- approve the location of the dealership (art. 4);
- approve the facilities of the dealership (art. 4.4);
- approve the size of the dealership (art. 4.4.3);
- require the dealership to have proper equipment (art. 4.4.5);
- require the dealership to have certain tools (art. 7.2.4);
- require adequate and trained sales personnel (art. 5.1);
- require the dealership to perform warranty work regardless from whom the vehicle was purchased (art. 5.2.1 & 7.1.2);
- require the dealership to maintain adequate service and parts organization (art. 5.2.2);

- require competent, trained service and parts managers (art. 5.2.2);
- require trained service and parts personnel (art. 5.2.2);
- set prices that dealers can charge for warranty work (art. 6 & 7);
- require dealers to stock certain parts and accessories furnished by General Motors (art. 6.4.2);
- require dealers to perform predelivery inspections (art. 7);
- require dealerships to use only General Motors or General Motors approved parts and accessories in performing warranty repairs (art. 7.2.1);
- require dealers to send employees for training with General Motors (art. 8); and
- require dealerships to maintain a certain level of working capital (art. 10).

General Motors first argues that because the franchise agreement between General Motors and Dow specifically disclaimed any agency relationship between the two parties, neither Dow nor Durham could have been an agent of General Motors.[3] The agreement stated it

does not make either party the agent or legal representative of the other for any purpose, nor does it grant either party authority to assume or create any obligation on behalf of or in the name of others. No fiduciary obligations are created by this Agreement.

General Motors argues that because agency is a contractual relationship, the contract terms by which the parties define their relationship are of utmost importance.

The Texas Supreme Court has held that when a contract establishes an independent contractor relationship rather than an agency relationship and does not grant control over

---

**3.** General Motors also cites other Texas cases holding that the specific provision outlined above from their dealership agreement does not impose an agency relationship between itself and dealerships. *See Gabaldon v. General Motors Corp.*, 876 S.W.2d 367 (Tex.App.—El Paso 1993, no writ); *General Motors Corp. v. Washington*, 559 S.W.2d 425 (Tex.Civ.App.—Texarkana 1977, no writ) (venue case stating that the appellees offered no proof of any facts that a relationship existed between the dealership and the manufac-

turer). These cases are distinguishable, however, because neither discuss who had the right to control the specific acts that gave rise to the action nor discuss warranty work. Ely also cites *General Motors Corp. v. Ramsey*, 633 S.W.2d 646 (Tex.App.—Waco 1982, writ dism'd), which held that the General Motors dealership agreement created an agency relationship because the agreement entrusted predelivery inspections and service to the dealership. *Ramsey*, 633 S.W.2d at 648.

the details of the contractor's work, then evidence must be produced to show that despite the contract terms, the true relationship between the parties gave the principal a right of control. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 592 (Tex.1964); *see also Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (citing *Love* and stating that sporadic action directing the details of the work will not destroy the contract). Furthermore, if a conclusory statement in the agreement is contradicted by specific provisions, the court is not required to accept the legal conclusion.

Ely responds by citing *Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.), in which the court held that although an agency disclaimer in a dealership agreement is some evidence of an absence of an agency relationship, evidence that the manufacturer had the right to control warranty repair work done by its dealerships could refute this disclaimer. *Mahan Volkswagen,* 648 S.W.2d at 329. Ely contends that the above provisions of the contract show control by General Motors such as to create a fact question for the jury. As General Motors points out, however, these contentions are based upon interpretation of the contract and do not involve disputed fact issues. Therefore, this determination is one of law and as such, could properly be determined in a summary judgment.

General Motors contends the dealership agreement does not create an agency relationship and is consistent with independent contractor status because

- the dealership exercises full managerial control over the dealership;
- the dealership is obligated to sell and promote the vehicles;
- the dealership is obligated to provide service;
- the dealership is obligated to perform warranty and other repairs and to provide the tools essential to this service;
- General Motors does not control how the dealership operates on a daily basis;

- General Motors does not have the right to control the details of the selling and servicing of the vehicles;
- General Motors does not participate in the hiring, firing, or compensation of any dealership personnel;
- General Motors does not set the hours of the dealership's operation; and
- General Motors does not participate in the financial operations of the dealership's business.

Based on these provisions, General Motors argues that the contract does not create an agency relationship between itself and Dow or Durham.

General Motors contends that even if we determine a fact issue remains as to agency generally, the trial court's grant of summary judgment was appropriate because it established as a matter of law that there is no genuine issue of material fact as to one of the essential elements of Ely's cause of action, *i.e.,* that General Motors had a right to control Durham's test-drive of the Cadillac, which was the injury-causing event in this case. Texas Courts have required specific control over the injury-causing activity to impose vicarious liability. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 199 (Tex. 1995); *Exxon v. Tidwell,* 867 S.W.2d 19, 22 (Tex.1993); *O'Bryant v. Century 21 South Central States,* 899 S.W.2d 270, 272 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Direkly v. ARA Devcon, Inc.,* 866 S.W.2d 652, 654 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). In support of its motion for summary judgment, General Motors offered summary judgment proof that it had no right to control Durham's test-drive: it did not hire him; it did not compensate him; it did not direct the physical details of his warranty repair work; and it did not have actual control over his test-drive. Ely offered summary judgment proof that General Motors contracted with Dow to do warranty service work, that General Motors provided service training and manuals to Dow pursuant to that contract, and that Dow was paid for the warranty work under the provisions of the contract. Ely presented no summary judgment evidence, however, that General Motors had the right to control Durham dur-

ing the act resulting in the wrongful death action, namely the test-drive. Because General Motors has established an absence of essential element of Ely's vicarious liability cause of action based on an agency relationship between it and Dow, General Motors was entitled to summary judgment on this issue. *See Gibbs*, 450 S.W.2d at 828.

■ Ely next contends the trial court erred in granting summary judgment for General Motors because Dow and its employees were engaged in a joint enterprise [4] with General Motors and, as such, any liability of Dow or Durham would be imputed to General Motors. The elements of a joint enterprise are:

(1) an agreement among the members of the group;

(2) a common purpose;

(3) a community of pecuniary interest; and

(4) an equal right to control the enterprise.

*Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex.1995); *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995).

■ Ely argues that the dealer sales and service contract and the franchise contract between General Motors and Dow presented evidence of each of the above factors.[5]

General Motors argues that the third element of joint enterprise is lacking, *i.e.*, that General Motors and Dow had no community of pecuniary interest. The community of pecuniary interest required is to be in the common purpose of the enterprise. *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 16–17 (Tex.1974). Ely argues that the dealer sales and service and franchise agreements show a common purpose of marketing new cars and a common pecuniary benefit to each. We have found no cases where a franchisor/franchisee relationship, or a wholesaler/retailer relationship, has been determined to create the type of common pecuniary benefit to establish a joint enterprise. Ely correctly states that the service franchise agreements in the present case show that both General Motors and Dow were in the business of marketing new cars. It is only, however, when the parties are united by a common purpose that a joint enterprise exists. *Common* in this context means sharing without special or distinguishing characteristics. *See* BLACK'S LAW DICTIONARY 274 (6th ed.1990) (defining *common* ). When one party is selling vehicles wholesale to another to sell retail, there is not a pecuniary interest in a common purpose. We find that the service and franchise agreements presented by Ely do not show the type of pecuniary interest required for a joint enterprise.

■ General Motors next argues that the fourth element is lacking, *i.e.*, they did not have the right to control the manner and

---

4. The terms joint enterprise and joint venture are often used in Texas cases in the same context. Often, joint enterprise is used to describe the endeavor that joint venturers are seeking to conduct. For example, in *R.L. Lipsey, Inc. v. Panama–Williams, Inc.*, the court used the terms as follows: "If a *joint venture* exists, one joint venturer has the authority to bind other joint venturers by contracts made in furtherance of the *joint enterprise*." 611 S.W.2d 917, 920 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (emphasis added); *accord Otis Elevator Co. v. Zac Smith & Co.*, 715 S.W.2d 806, 808 (Tex.App.—Austin 1986) (*joint venturer* may bind his associates by contract in furtherance of a *joint enterprise* ), *aff'd*, 734 S.W.2d 662 (Tex. 1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988); *Vick v. George*, 671 S.W.2d 541, 547 (Tex.App.—San Antonio 1983) (equal right of all parties in a *joint venture* to direct and control conduct of each other in obtaining objectives of the *joint enterprise* may be express or implied), *rev'd in part on other*

grounds, 686 S.W.2d 99 (Tex.1984); *see also Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995); *Government Employees Ins. Co. v. Edelman*, 524 S.W.2d 546, 549 (Tex.Civ. App.—Beaumont 1975, writ ref'd n.r.e.). The term joint enterprise (sometimes called a common enterprise according to BLACK'S LAW DICTIONARY 838 (6th ed.1990)) appears most commonly in automobile negligence cases. *See* 13 WILLIAM V. DORSANEO, TEXAS LITIGATION GUIDE § 290.32[2][e] (1996); 1 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 4.05[2][b] (1996).

5. Ely cites *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716 (Tex.1995), and argues that because she pleaded joint enterprise and offered some evidence of such, she should be allowed to reach the jury with this issue. The portion of *Triplex* that she cites, however, deals with when a party is entitled to a jury question on an issue. *Triplex*, 900 S.W.2d at 718. At the summary judgment stage, Ely had to conform with the summary judgment rules outlined above.

means of the warranty service. The Texas Supreme Court has defined the "equal right of control" element to mean that each member of the joint venture must have an authoritative voice or "must have some voice and right to be heard." *Shoemaker*, 513 S.W.2d at 15; *see also Triplex*, 900 S.W.2d at 718–19; *Nelson v. Fulkerson*, 155 Tex. 298, 286 S.W.2d 129, 131 (1956); RESTATEMENT (SECOND) OF TORTS § 491 (1965) (cited by both *Triplex* and *Shoemaker*).

In *Triplex*, police officers injured in an automobile accident involving drunk driving sued the nightclub where the driver had been drinking, the bartender who served the drinks, and the radio station who promoted the drink specials at the bar. *Triplex*, 900 S.W.2d at 718. The officers sought a jury question on whether the bar and the radio station were engaged in a joint enterprise. *Triplex*, 900 S.W.2d at 718. The Texas Supreme Court upheld the trial court's refusal to submit such an instruction, emphasizing that the radio station had little right of control in the specific action which injured the plaintiff. *Triplex*, 900 S.W.2d at 719.

The critical inquiry in the present case is whether General Motors had a right to control Durham's actions at the time he injured Paul Ely, *i.e.*, during the test-drive. As was the case in *Triplex*, Dow was in the best position to control the test drive: Dow hired Durham, Dow trained Durham, and only Dow had the opportunity to daily monitor his activities. Therefore, General Motors did not have the right to control Durham's actions as a part of a joint enterprise between General Motors and Dow. Because General Motors has established an absence of essential element of Ely's joint enterprise cause of action, it was entitled to summary judgment on this issue. *See Gibbs*, 450 S.W.2d at 828.

■ Ely next contends the trial court erred in granting summary judgment for General Motors on Ely's independent negligence claim because a genuine issue of material fact existed as to whether General Motors negligently permitted Dow to operate (i) without adequate experience, or (ii) severely below General Motors' own capitalization requirements, and that these actions proximately caused the death of Paul Ely. The elements of a negligence claim include:

(i) the existence of a legal duty owed by the defendant to the plaintiff;

(ii) the breach of that duty;

(iii) which proximately caused the plaintiff's injuries; and

(iv) caused damage to the plaintiff.

*Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

Ely first contends that General Motors was negligent in selecting Dow as a dealer.[6] To support this argument, Ely cites General Motors' own assessment that Dow "had no automotive experience" and was "severely undercapitalized."[7] Ely argues that granting a dealership franchise in this situation contradicted General Motors' own guidelines as outlined in the dealer sales and service agreement. According to Ely, General Motors should have foreseen that a dealership operating under these conditions could injure the general public.

■ General Motors responds that Ely failed to show a legal duty to do business exclusively with fully capitalized individuals or businesses. Duty is the threshold inquiry, without which there can be no liability in

---

6. Ely did not plead that General Motors was liable for the negligent entrustment of its warranty repair jobs to Dow. Texas cases utilizing a negligent entrustment theory of recovery have generally been limited to circumstances involving the entrustment of a chattel. *See, e.g., Mundy v. Pirie–Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587, 591 (1947) (automobile); *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex.App.—Texarkana 1992, no writ) (automobile); *Kennedy v. Baird*, 682 S.W.2d 377, 378 (Tex.App.—El Paso 1984, no writ) (firearm).

7. In Ely's pleadings, one basis for her claim that General Motors was undercapitalized was that Dow was not sufficiently capitalized to satisfy tort judgments. Texas law, however, has never imposed a duty on the part of one party to ensure that other parties with whom it does business are capitalized sufficiently to satisfy any possible tort judgment.

negligence. *El Chico,* 732 S.W.2d at 311; *Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976). The existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Bird,* 868 S.W.2d at 769; *Phillips,* 801 S.W.2d at 525.

■ Ely argues that such a duty is created by the contract between General Motors and Dow. Although a third party could not recover under the terms of the contract unless he or she proved his or her status as third-party beneficiary,[8] a tort duty may arise from a contractual relationship. *See Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 396 (Tex.1991) (citing RESTATEMENT (SECOND) OF TORTS § 324A (1977)); *Seay v. Travelers Indem. Co.,* 730 S.W.2d 774, 775–76 (Tex.App.—Dallas 1987, no writ) (also citing RESTATEMENT § 324A). Privity is generally not a defense to a negligence suit for personal injuries. *See Strakos v. Gehring,* 360 S.W.2d 787, 796 (1962) (explaining that a subcontractor performing services for a general contractor owed a duty in tort to a third person despite an absence of privity); *Blue Bell, Inc. v. Peat, Marwick, Mitchell and Co.,* 715 S.W.2d 408, 411 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (stating that an accountant may owe a duty in tort to a third person despite an absence of privity).

■ General Motors responds that the agreement in the present case specifically disclaims any tort duty to Ely. The contract between Dow and General Motors stated that it "is not intended to convey any rights or benefits to anyone who is not a party to [the] Agreement." Parties may agree to exempt one another from future liability for negligence as long as the agreement does not violate the Constitution, a statute, or public policy, and one party is not disadvantaged in bargaining power. *E.g., Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974); *Fox Elec. Co. v. Tone Guard Sec., Inc.,* 861 S.W.2d 79, 82–83 (Tex.App.—Fort Worth 1993, no writ); *Derr Constr. Co. v. City of Houston,* 846 S.W.2d 854, 859 (Tex.App.—Houston [14th Dist.] 1992, no writ). Neither Dow nor General Motors, however, could ef-fectively waive the negligence claims of third parties. Therefore, the disclaimer in the contract will not disclaim Ely's negligence claim.

■ General Motors argues that even if the law imposes such a duty, the breach of such duty was not the proximate cause of Ely's injuries. Proximate cause is generally a mixed question of law and fact for the jury to determine. *El Chico,* 732 S.W.2d at 314; *Mackie v. McKenzie,* 900 S.W.2d 445, 449 (Tex.App.—Texarkana 1995, writ denied). A lack of proximate cause, however, may be established as a matter· of law where the circumstances are such that reasonable minds could not arrive at a different conclusion. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Mackie,* 900 S.W.2d at 449.

■ Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995); *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury, without which the injury would not have otherwise occurred. *Union Pump,* 898 S.W.2d at 775; *Prudential Ins. Co. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex. 1995). Cause in fact is limited by the doctrine of foreseeability, which means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his or her negligent act created for others. *Travis,* 830 S.W.2d at 98; *Nixon,* 690 S.W.2d at 549–50. Foreseeability does not require that the actor anticipate the precise manner in which the injury will occur, but only the general character of the injury. *Travis,* 830 S.W.2d at 98; *El Chico,* 732 S.W.2d at 313; *Nixon,* 690 S.W.2d at 550.

■ The Texas Supreme Court has held that a defendant may be entitled to a summary judgment based on causation when the defendant's conduct is "too remotely connected with the plaintiff's injury to constitute legal causation." *Union Pump,* 898 S.W.2d

---

8. *Barnes v. Wendy's Internat'l,* 857 S.W.2d 728, 730–31 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Revill v. Gifford–Hill & Co.,* 836 S.W.2d 311, 313 (Tex.App.—Texarkana 1992, no writ).

at 775; *see also Lear Siegler,* 819 S.W.2d at 472. In the present case, Ely asserts that General Motors' entering into a dealership agreement with Dow was the legal cause of Paul Ely's injuries because General Motors knew that Dow was undercapitalized and inexperienced in running a dealership. Ely made no suggestion under this negligence claim, however, that General Motors knew that Dow and its employees did not have the proper equipment, training, or knowledge to make warranty repairs. The specific acts of negligence of which Ely complains in her pleadings include:

(a) driving ... at a rate of speed far in excess of the posted speed limit;

(b) failing to properly apply the brakes;

(c) failing to keep the automobile on the paved portion [of the road];

(d) failing to maintain proper control of the automobile; and

(e) operating the automobile while under the effects of marijuana.

Any inexperience in running a dealership or undercapitalization on the part of Dow is too remotely connected with the above specific acts of negligence to constitute legal causation.

Ely argues that General Motors was negligent in failing to implement a drug policy for employees who would be driving on the roadways, citing TEX. LAB.CODE ANN. § 411.091 (Vernon 1996). As previously discussed, however, the employees of Dow were not employees of General Motors. Therefore, General Motors had no duty under the Texas Workers' Compensation Act or under common law to implement such a drug policy.

■■■ Ely next contends that General Motors was negligent in manufacturing, marketing, and advertising a vehicle designed to exceed safe speed limits. In her sixth amended petition, Ely asserts that General Motors marketed the Northstar-powered Cadillac by running the following advertisement:

You feel the surge of its 32-valve, 295-horsepower V8. As you reach 60 mph in 7.5 seconds, the Road-Sensing Suspension is

actually reading every inch of the road. The feedback from the Speed-Sensitive Steering grows progressively firmer as you quickly pass 100 mph. Of course, you wouldn't really do this because you're not a professionaly (sic) driver on a closed track. But if you were, the full-range Traction Control assures maximum grip as you approach 150 mph.

Generally, there is no legal duty to control the actions of third parties, absent some special relationship, such as master/servant or parent/child. *Triplex,* 900 S.W.2d at 720; *Phillips,* 801 S.W.2d at 525. General Motors argues that because there is no special relationship between it and Durham,[9] it had no duty to control his test drive of the Cadillac.

■■■ In her pleadings, Ely limits her allegation for liability to a violation of a fiduciary duty to the public by General Motors by running the above advertisement and, in so doing, encouraging reckless driving. Although the pleadings are not considered summary judgment proof, they frame the issues involved in ruling upon the summary judgment motion. *See, e.g., Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex. 1982); *Shawell v. Pend Oreille Oil & Gas Co.,* 823 S.W.2d 336, 338 (Tex.App.—Texarkana 1991, writ denied); *Phagan v. State,* 510 S.W.2d 655, 659 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). Ely contends in her pleadings that General Motors committed negligence in violating a fiduciary duty to the public by running the above advertisement. She does not, however, plead or cite any facts or law giving rise to a fiduciary duty on the part of General Motors. The trial court, therefore, did not err in granting summary judgment in favor of General Motors on this negligence claim.

The judgment of the trial court is affirmed.

STARR, J., not participating.

---

9. Although Ely earlier argues that both Durham and Dow were agents of General Motors, she

makes no argument that either was an employee or servant of General Motors.