NO. 07-07-0062-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MAY 7, 2007



______________________________




VELVET MARIE REYES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 27TH DISTRICT COURT OF BELL COUNTY;



NO. 60076; HONORABLE JOE CARROLL, JUDGE



_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Pursuant to an open plea of guilty, Appellant, Velvet Marie Reyes, was convicted
of theft, enhanced, and sentenced to twenty-one months in a state jail facility. In
presenting this appeal, counsel has filed an Anders (1) brief in support of a motion to
withdraw. We grant counsel's motion and affirm.

 In support of his motion to withdraw, counsel certifies he has diligently reviewed the
record and, in his opinion, the record reflects no reversible error upon which an appeal can
be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San Antonio 1984, no pet.).
Thus, he concludes the appeal is frivolous. Counsel has candidly discussed why, under
the controlling authorities, there is no error in the court's judgment. See High v. State, 573
S.W.2d 807, 813 (Tex.Cr.App. 1978). Counsel has also shown that he sent a copy of the
brief to Appellant and informed Appellant that, in counsel's view, the appeal is without
merit. In addition, counsel has demonstrated that he notified Appellant of her right to
review the record and file a pro se response if she desired to do so. The Clerk of this
Court also advised Appellant by letter of her right to file a response to counsel's brief. 
Appellant filed a response, and the State filed a brief requesting that the trial court's
judgment be affirmed based on the Anders brief. 

 Against her trial attorney's advice, Appellant rejected a plea offer of fifteen months. 
During the punishment phase, she admitted having numerous theft convictions. During
cross-examination she confirmed that she had been stealing for approximately thirteen
years as reflected in the presentence investigation report. By her testimony and a letter
from her to the trial judge, which was admitted into evidence, she attempted to explain the
reasons for her "poor decisions" in hope of leniency. As a mother of four, she had become
desperate to provide her children with a better life. Following closing arguments, the trial
court assessed a sentence of twenty-one months.

 By the Anders brief, counsel asserts the trial court substantially complied with article
26.13 of the Texas Code of Criminal Procedure in admonishing Appellant regarding her
guilty plea. Counsel further asserts that Appellant's sentence was lawfully imposed. See
Tex. Pen. Code Ann. §§ 31.03(e)(4)(D) & 12.35(a) (Vernon 2003).

 We have independently examined the entire record to determine whether there are
any non-frivolous grounds which might support the appeal. See Penson v. Ohio, 488 U.S.
75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); Stafford v. State, 813 S.W.2d 503, 511
(Tex.Cr.App. 1991). We have found no such grounds. After reviewing the record, 
counsel's brief, Appellant's response, and the State's brief, we agree with counsel that the
appeal is frivolous. See Bledsoe v. State, 178 S.W.3d 824 (Tex.Cr.App. 2005).

 Accordingly, counsel's motion to withdraw is granted and the trial court's judgment
is affirmed.

 Patrick A. Pirtle

 Justice


 

Do not publish.
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



she had made through
Grimes, incurring a penalty, and purchased eight telephones from TSI, leasing them to
Phoenix. She also purchased five telephones from ATC, Inc., leasing them to Alpha
Telcom. Her investments totaled $81,000. In June 2000 Phoenix quit making payments.
Through discussions with Grimes or correspondence from Phoenix, Green learned Phoenix
was in bankruptcy and lessors could have their telephones managed by a company named
ETS. Green agreed to assignment of the Phoenix leases to ETS. 

 Green testified ETS did not make payments in accordance with the lease
agreements and soon was in bankruptcy also. Green continued to receive lease payments
for the telephones she purchased from ATC but sought to liquidate that investment
because she was concerned about the risk. She testified Grimes told her it was a different
situation from that involving Phoenix and "everything would be fine." When she maintained
her desire to liquidate, Grimes persuaded her to keep the telephones by offering
documentation of insurance. He provided a document entitled "Equipment Purchaser's
Buy Back Guarantee Certificate." 

 On one occasion Green called SBP, requesting to speak to Grimes or the person
"in charge." She ultimately spoke to Watts, who she had met briefly in 1998 when he
accompanied Grimes on a visit to her place of employment. They had a lengthy telephone
conversation, and Watts subsequently spoke with her again by telephone. He made efforts
on her behalf concerning her ATC phones. (3) 

 Green was not able to recover the capital she invested or any insurance proceeds
and received a total of only $2,749.14 in lease payments. She brought suit against Watts
and Grimes asserting claims for negligence, fraud, violation of the Deceptive Trade
Practices Act, (4) breach of fiduciary duty and negligent representation. She also alleged
Watts was liable for Grimes's conduct under theories of agency, conspiracy and joint
enterprise. In response to questions the jury found (1) the negligence of Grimes
proximately caused Green's damages, (2) there was a relationship of trust and confidence
between Green and Grimes, (3) Grimes breached a fiduciary duty he owed to Green, (4)
both Watts and Grimes committed fraud against Green, (5) both made negligent
representations to Green on which she justifiably relied, (6) Grimes engaged in deceptive
trade practices which caused damages to Green, (7) Grimes engaged in unconscionable
action which caused damages to Green, (8) Grimes's deceptive practices or
unconscionable conduct was intentional, (9) Watts and Grimes were engaged in a joint
enterprise, (10) Watts and Grimes were not engaged in a conspiracy, and (11) Grimes had
actual or apparent authority to act as Watts's agent. The jury found Green suffered actual
damages in the amount of $25,000, she should be awarded exemplary damages of
$27,750 from Watts and $47,250 from Grimes, and her reasonable and necessary
attorney's fees were $30,000. Watts perfected appeal from that judgment. Grimes did not
appeal.

 Watts challenges the trial court's judgment in five points of error. He challenges 
the legal and factual sufficiency of the evidence supporting the jury's answers finding: (1)
he committed fraud against Green, (2) he made negligent misrepresentations to her, (3)
he was engaged in a joint enterprise with Nathan Grimes, (4) Grimes had actual or
apparent authority to act as his agent, and (5) that Green was entitled to the award of
exemplary damages.


Standard of Review

 When both legal and factual sufficiency issues are raised, we review the legal
sufficiency point first to determine whether there is any probative evidence to support the
jury's verdict. See Glover v. Texas General Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). 
In a legal sufficiency review, we review the evidence in a light that tends to support the
finding of the disputed facts and disregard all evidence and inferences to the contrary. Lee
Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001); Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001). A legal sufficiency point will be sustained when: (a) there
is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of a vital fact. Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla, and thus legally sufficient,
evidence of the existence of a vital fact is present when the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about the fact's existence. 
Lee Lewis Const., 70 S.W.3d at 782-83. 

 When considering factual sufficiency challenges to a jury's verdict, courts of appeals
must consider and weigh all of the evidence, not just evidence which supports the verdict. 
See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996). A court of appeals can set aside the verdict only if it is
so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and
unjust. See Maritime Overseas Corp., 971 S.W.2d at 407; Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). 

Fraud

 Watts's first point of error challenges the jury finding he committed fraud against
Green. We sustain the point, concluding the evidence is legally insufficient to support the
jury's finding. 

 Green's response to Watts's first point does not identify any representation made
by Watts to Green, but seeks to impute to Watts the general conduct of Grimes, alleging
Watts was the "architect of the entire plan to sell these fraudulent products." She cites
cases including this court's opinion in First State Bank of Miami v. Fatheree, 847 S.W.2d
391 (Tex.App.-Amarillo 1993, writ denied), and Corpus Christi AreaTeachers Credit Union
v. Hernandez, 814 S.W.2d 195 (Tex.App.-San Antonio 1991, no writ), for the proposition
that each party to a fraudulent transaction is responsible for the acts of the other if done
in furtherance of the fraudulent scheme. She also relies on language from In re Arthur
Anderson, L.L.P., 121 S.W.3d 471, 481 (Tex.App.-Houston [14th Dist.] 2003, no pet.),
stating that a party who participates in a fraudulent transaction and reaps the benefits need
not have made representations to a plaintiff to be liable for fraud. 

 Here the jury was instructed (5) that fraud occurs when a party makes a material
misrepresentation; the misrepresentation is made with knowledge of its falsity or made
recklessly without any knowledge of the truth and as a positive assertion; the
misrepresentation is made with the intention that it should be acted on by the other party;
and the other party acts in reliance on the misrepresentation and thereby suffers injury. (6) 
See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). As submitted, the fraud
question thus required the jury to find Watts made a material misrepresentation. The
question of Watts's liability for the conduct of Grimes was submitted to the jury through the
questions asking about joint enterprise, conspiracy and agency. 

 The evidence reflects no direct communication between Watts and Green
concerning her investment in pay phones until after her purchase of them. Both Watts and
Green testified to telephone conversations concerning the bankruptcy of ETS and her
desire to liquidate her telephone investments. The dates of the conversations were not
clearly established but Green said the first conversation was "very shortly" after Phoenix
entered bankruptcy proceedings one-and-a-half months after she made her investment. 

 Assuming that the conversations contained misrepresentations that otherwise could
provide a basis for liability, there is no evidence that Green took any action to her injury in
reliance on any misrepresentation Watts made in the conversations. Her investments were
already made, and the question before her at the time was whether to agree to Phoenix's
assignment of her lease to ETS. 

 We similarly conclude the "You Can't Beat It!!!!" flyer cannot form the basis for
Watts's liability on a fraud theory. Even assuming, arguendo, the statements in the flyer
could be seen as representations by Watts to Green that satisfy the other elements of
fraud, (7) there is no evidence Green acted in reliance on the flyer. As Watts's brief notes,
on its face, the flyer does not refer to the pay phones and or any other particular
investment. Only by receiving additional information, which Green indisputedly received
through Grimes's sales presentation, could a reader of the flyer learn of the particular
opportunity it touted.

 We agree with Watts the evidence is legally insufficient to support the jury's finding
he committed fraud, and sustain his first point of error. 

Exemplary Damages

 Our disposition of Watts's first point of error requires also that we sustain his fifth
point, in which he challenges the legal and factual sufficiency of the evidence supporting
the award of exemplary damages to Green. The exemplary damages question inquired
of the jury what sum, if any, should be assessed against the defendants as exemplary
damages "for the conduct found in response to Question 3 [concerning the defendants'
compliance with a fiduciary duty] or 4 [concerning fraud]." In their responses to questions
3 and 4, the jury found that Grimes did not comply with his fiduciary duty to Green (8) and
found that both Watts and Grimes committed fraud against her. 

 As applicable to this case, Section 41.003 of the Civil Practice & Remedies Code
in effect at the time Green brought suit permitted an award of exemplary damages when
a claimant proves by clear and convincing evidence that the harm with respect to which
exemplary damages are sought resulted from fraud. Acts of June 16, 1987, 70th Leg., 1st
C.S., Ch. 2, § 2.12, 1987 Tex. Gen Laws 37 (current version at Tex. Civ. Prac. & Rem.
Code Ann. § 41.003(a) (Vernon 1997 & Supp. 2004)). Having found no evidence that
fraud committed by Watts caused harm to Green, we must conclude the award of
exemplary damages is not supported by legally sufficient evidence. 

 Green contends that evidence supporting Watts's vicarious liability for Grimes's
actions also will support the imposition of exemplary damages on Watts. We do not agree. 
The question submitted conditioned the award of exemplary damages on the jury's findings
on the fiduciary duty and fraud questions. The jury was not instructed that it could award
such damages based on its findings of joint enterprise or agency. Cf. Hammerly Oaks, Inc.
v. Edwards, 958 S.W.2d 387, 393-94 (Tex. 1997). Watts's fifth point of error is sustained. 

Joint Enterprise

 We next consider Watts's third point, which challenges the legal and factual
sufficiency of the evidence supporting the jury's finding that he and Grimes were engaged
in a joint enterprise. There is no dispute that evidentiary support for that finding would
justify imposition of liability on Watts for Grimes's conduct. (9) See Shoemaker v. Estate of
Whistler, 513 S.W.2d 10, 13 (Tex. 1974). In St. Joseph Hospital v. Wolff, 94 S.W.3d 513
(Tex. 2002), the supreme court reaffirmed its adoption of the Restatement (Second) of
Torts' recitation of the elements which must be established to find a joint enterprise. Id.
at 526 (quoting Shoemaker). The jury was instructed accordingly, that a joint enterprise
exists if the persons concerned have (1) an agreement, express or implied, with respect
to the enterprise or endeavor; (2) a common purpose; (3) a community of pecuniary
interest in that purpose among the members; and (4) an equal right to a voice in the
direction of the enterprise, which gives an equal right of control. See id.; Restatement
(Second) of Torts, § 491 (1965). 

 Watts contends, without discussion or citation of authority, there is no evidence of
any of the first three elements. We disagree. Grimes testified Watts called him and other
agents associated with SBP together when TSI's Cimini came to present the pay phone
investment product. Watts and Grimes each signed contracts providing for their sale of the
product. The product was discussed subsequently at SBP's weekly sales meetings. The
flyer Watts distributed, seeking to generate interest in the investment program, stated it
was "offered by Senior Benefit Plans of Lubbock." Watts sometimes conducted joint sales
presentations to clients, with Grimes and other agents. Like in the insurance business,
Watts shared in the agent's commission when they made a joint sale. When Green called
SBP, Watts discussed her investment with her rather than simply referring her to Grimes.
He personally took action with a phone marketing company official on her behalf. The jury
had ample evidence from which it could infer at least an implied agreement between Watts
and Grimes concerning sale of pay phones and a common purpose to do so. 

 Neither party specifically addresses the third element, which was the focus of the
court's opinion in St. Joseph Hospital. In explicating the meaning of the term "community
of pecuniary interest" in the common purpose, the court wrote "[t]here must . . . be
evidence that the monetary benefits were shared among the members without special or
distinguishing characteristics[.]" 94 S.W.3d at 532 (adopting language from Ely v. General
Motors Corp., 927 S.W.2d 774, 779 (Tex.App.-Texarkana 1996, writ denied)). Testimony
indicated that agents' contracts providing for their sale of pay phones contained a
commission structure similar to that of their insurance agency contracts. Agents such as
Grimes received a ten percent commission on their own sales. Watts received a six
percent "override" on sales by other agents, and a sixteen percent commission on his own
sales. The percentages Watts and Grimes each received differed, but the monetary
benefits Watts received from a sale by Grimes otherwise was not distinguishable from that
received by Grimes. The jury heard evidence from which it could find the third element of
a joint enterprise. 

 Watts's argument focuses on the fourth element of joint enterprise. The
Restatement language adopted by the supreme court and included in the court's charge
requires proof of "an equal right to a voice in the direction of the enterprise, which gives an
equal right of control." Shoemaker, 513 S.W.2d at 16; see Texas Dep't of Transp. v. Able,
35 S.W.3d 608, 614 (Tex. 2000). The supreme court has said that the equal right to
control element means that each participant in the joint enterprise must have "an
authoritative voice" or "some voice and right to be heard." Able, 35 S.W.3d at 614, quoting
Shoemaker, 513 S.W.2d at 16. 

 Viewed in a light tending to support the finding of joint enterprise, the record
contains evidence that Watts had a voice and right to be heard concerning the sale of pay
telephones by Grimes. Grimes and Watts operated out of Watts's business premises
under Watts's assumed name of Senior Benefit Plans. After TSI questioned Watts's use
of the flyer, Watts told Grimes and other agents to stop using it as a mail-out piece. 
Although Watts did not meet with Green concerning her investment in the phones, he
sometimes conducted joint sales presentations to clients with Grimes. Watts's two
telephone conversations with Green after her purchase of the phones, and his efforts on
her behalf with the phone company marketing official also speak to his right to be heard
concerning the subject of Grimes's dealings with Green. Legally sufficient evidence
supports the existence of the fourth element of joint enterprise. 

 Evidence contrary to the jury's finding included the testimony of Watts and Grimes
that Grimes was self-employed and Watts did not control Grimes's activities in the sale of
pay phones. Watts generally had no prior knowledge of who Grimes planned to solicit or
of the nature of his conversations with prospective purchasers. Grimes's contract with the
sellers of phones like TSI was separate from Watts's contract. Grimes testified that TSI's
temporary termination of Watts's contract in a dispute over the use of the "You Can't Beat
It!!!!" flyer did not affect his contract. Considering all the evidence, however, and applying
the meaning given the equal right to control element by the supreme court, we cannot say
the jury's finding that Watts had an equal right to a voice in the direction of Grimes's sale
of pay phones is so contrary to the overwhelming weight of the evidence that the verdict
is clearly wrong and unjust. (10)Conclusion

 Our disposition of Watts's first, third and fifth points of error disposes of his appeal,
making consideration of his second and fourth points unnecessary. Tex. R. App. P. 47.1. 
 

The trial court's judgment awarding exemplary damages against Watts is reversed;
otherwise, the judgment is affirmed.

 

 James T. Campbell

 Justice




 

 



1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The flyer attributes to the unidentified investment characteristics including "A great
return - 14.1% return on capital; Safety - insured asset backed for safety; Guaranteed -
contractually guaranteed for 5 years; No market risk - You won't loose [sic] your gains; No
interest fluctuations - level returns for 5 years." Other sales materials made similar claims.
3. Watts testified that, after his conversations with Green, he contacted an official
with one of the involved companies and told him "to do one of two things. Number one,
to either get her phones insured, or, number two, to refund her money back."
4. Tex. Bus. & Com. Code Ann. §§ 17.41-.506, .55-.63 (Vernon 2002). 
5. The record before us does not reflect any objections made to the questions or
instructions contained in the court's charge. We therefore review the sufficiency of the
evidence in light of the charge submitted. Bradford, 48 S.W.2d at 754; see City of Fort
Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000). 
6. The charge followed the pattern jury charges for factual misrepresentations and
false statements of opinion. See Comm. on Pattern Jury Charges, State Bar of Texas,
Texas Pattern Jury Charges-Business, Consumer, Insurance & Employment, PJC 105.3A,
105.3D, 105.3E (2003).
7. Grimes acknowledged in his testimony that at least one statement in the flyer was
untrue at the time of his presentation to Green. Watts acknowledged that statements in
the flyer could be misconstrued. 
8. In response to a previous question, the jury effectively determined Watts did not
owe Green the duties of a fiduciary. 
9. The jury's findings that Grimes's actions were the cause of injury to Green are not
challenged in this appeal.
10. Watts v. Lawson, No. 07-03-0485-CV, 2005 WL 1241122 (Tex.App.-Amarillo May
25, 2005, no pet.), involved claims against Watts and Grimes brought by another of
Grimes's clients who purchased pay telephones from him. Our conclusion here is
consistent with the holding in that case that similar evidence supported a finding Watts and
Grimes were engaged in a joint enterprise.