In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-001 CV


____________________



ROYAL FOOD & GAS, INC. d/b/a HONEY STOP II, 


HOA TRUONG, AND ALI HUSAINAT, Appellants



V.



PETROFUELS CORPORATION, Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-173,447-A






MEMORANDUM OPINION 


 This appeal arises from a summary judgment granted in favor of Petrofuels
Corporation ("Petrofuels") and against the appellants, Royal Food & Gas, Inc. (doing
business as Honey Stop II), Hoa Truong, and Ali Husainat. Appellants sued Valley Star, Inc. 
("Valley Star") and Petrofuels for breach of contract and negligence arising from soil
contamination allegedly caused by underground storage tanks owned and maintained by
Valley Star. (1) We affirm the trial court's judgment.

Background


 Appellants Truong and Husainat own the property at issue and also own the corporate
appellant, Royal Food & Gas, Inc. Appellant Royal owns and operates the Honey Stop II,
a convenience store located on the property. The relationship between appellants and Valley
Star is governed by a 1982 lease agreement between Royal's predecessor, Nell Durbin (doing
business as Honey Stop II) and Valley Star's predecessor, Reed Distributing Company
("Reed"). The lease gave Reed the right to install and maintain self-service fuel dispensing
equipment on the property. The lease further allowed the convenience store's owner to
operate the equipment and receive a portion of the revenue generated from gasoline sales. 
Subsequently, Reed assigned its rights under the lease to Valley Star, which also bought the
underground storage tanks on the convenience store's property.

 Appellants contended that Valley Star and Petrofuels were engaged in a joint
enterprise and that both were responsible for the alleged contamination at the Honey Stop II. 
The relationship between Valley Star and Petrofuels arises from shared office space, common
principals, and business dealings between the two corporations. Valley Star uses office space
at Petrofuels' headquarters. John Weitzel owns shares of stock in both Valley Star and
Petrofuels and is the president of both companies. John and Deborah Weitzel own all of the
shares of Petrofuels, while John Weitzel and Willis Reed own all the shares of Valley Star. 
Willis Reed is the majority shareholder of Valley Star, owning eighty percent. Petrofuels
owns no Valley Star shares and Valley Star owns no Petrofuels shares. Petrofuels sells fuel
on a wholesale basis to companies, including Valley Star, and arranges for transporters to
deliver the fuel to locations specified by those companies. Valley Star specified the Honey
Stop II as a location to which Petrofuels was to deliver fuel. 

 Petrofuels filed a motion for summary judgment based on lack of duty and lack of 
joint enterprise. Petrofuels supported its motion with John Weitzel's affidavit and additional
summary judgment evidence. Appellants filed a response to Petrofuels' motion for summary
judgment and also filed objections to Weitzel's affidavit. Without ruling on the objections,
the trial court granted summary judgment to Petrofuels.

 Appellants raise two issues. First, they contend the trial court erred in granting
summary judgment because the court considered improper affidavit evidence, namely,
Weitzel's affidavit. Second, appellants contend the trial court erred in granting summary
judgment because a material fact issue exists regarding whether Valley Star and Petrofuels
were engaged in a joint enterprise. 


Standard of Review


 We review summary judgments de novo. Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Traditional summary judgment, such as that obtained
here, is proper if the movant establishes there is no genuine issue of material fact and the
movant is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Knott, 128
S.W.3d at 215-16. When reviewing a traditional summary judgment under Rule 166a(c), the
appellate court indulges every reasonable inference in favor of the nonmovant, takes all
evidence favorable to the nonmovant as true, and resolves any doubts in the nonmovant's
favor. Knott, 128 S.W.3d at 215. "A defendant who conclusively negates at least one of the
essential elements of the plaintiff's cause of action is entitled to summary judgment." Little
v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004). If the movant
establishes a right to summary judgment, the burden shifts to the nonmovant to present
controverting evidence that raises a genuine issue of material fact. Huckabee v. Time Warner
Entm't Co. L.P., 19 S.W.3d 413, 420 (Tex. 2000). 

Affidavit


 In issue one, appellants contend the trial court erroneously considered Weitzel's
affidavit because it contains particular statements that are conclusory and are made by an
interested party. Petrofuels maintains that Weitzel's affidavit is proper summary judgment
evidence and that the trial court did not err in relying upon it.

 Specifically, appellants complain that Weitzel's affidavit improperly attempts to
controvert a 1999 document they assert supports their joint enterprise theory. The document
contains a single paragraph on a sheet of paper that has Petrofuels' name and address as a
heading. The document states:

Petrofuels Corporation


P.O. Box 23000


Beaumont, Texas 77720-3000



 This letter authorizes Ali Husainat to become the commission operator of the
convenience store self service gasoline facility located at 4790 Magnolia, Beaumont,
Texas, 77703 until August 24, 1999, subject to paragraph 15 of the lease between Nell
Durbin Dba The Honey Stop, lessor and Reed Distributing Co., Lessee, dated August
24, 1982.


 Executed this 13th day of January, 1999.


 Lessor: signed by Ali Husainat


 Lessee: signed by John C. Weitzel 


 Appellants claim the following statements in Weitzel's affidavit are not competent
summary judgment evidence:

 (1) the document's drafter made a mistake; 

 (2) Petrofuels' name should not have been typed at the top of the document; 

 (3) Petrofuels had no involvement in the agreement; and

 (4) Petrofuels has no interest or involvement with the commission agreement
between appellants and Valley Star, or the underlying lease between the
parties.

 We first consider whether the affidavit contains conclusory statements constituting
improper summary judgment evidence. "Statements are conclusory if they fail to provide
underlying facts to support their conclusions." LeBlanc v. Lamar State College, No. 09-06-340 CV, 2007 WL 2127051, at *5 (Tex. App.-Beaumont July 26, 2007, no pet.); see Chaney
v. Corona, 103 S.W.3d 608, 611 (Tex. App.-San Antonio 2003, pet. denied) (finding that
affidavit supporting summary judgment was not conclusory despite asserting that a party
acted in good faith because affidavit provided underlying facts). We may not consider an
affidavit's conclusory statements offered as summary judgment proof when there are no facts
to support the conclusions. Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex. App.-Houston
[1st Dist.] 1997, no writ). However, affidavits containing "statements that are incompetent
as summary judgment proof may support a motion for summary judgment if the remaining
statements contain sufficient factual information to sustain the movant's burden of proof." 
Id. at 588; see First Nat'l Bank in Munday v. Lubbock Feeders, L.P., 183 S.W.3d 875, 881
(Tex. App.- Eastland 2006, pet. denied). 

 In his affidavit, Weitzel stated numerous facts. He swore that:

 (1) He is the president of Petrofuels and of Valley Star; 

 (2) Petrofuels sells fuel on a wholesale basis to Valley Star; 

 (3) Petrofuels (a) does not own, operate, or maintain the
underground storage tanks located at Honey Stop II, (b) does not
lease land from the appellants, and (c) has never entered into an
oral or written agreement with any of the appellants;


 (4) Valley Star uses office space at Petrofuels' headquarters, but the
two companies are separate and distinct; Valley Star owns no
shares of Petrofuels' stock and Petrofuels owns no shares of
Valley Star's stock;


 (5) Deborah Weitzel and John Weitzel own all of the shares of
Petrofuels, while Willis Reed and John Weitzel own all of the
shares of Valley Star and Reed is the majority shareholder of
Valley Star; and


 (6) Weitzel signed the document in question on behalf of Reed
Distributing Company, the lessee.


 Weitzel concluded that he was not acting on behalf of Petrofuels when he signed the
agreement and that Petrofuels' name should not have been typed at the top of the document. 
He further concluded that the drafter of the agreement made a mistake in putting Petrofuels'
name there and that Petrofuels had no involvement in the agreement. Petrofuels contends
that Weitzel's conclusions are supported by his factual statements. We agree.

 The affidavit established facts to show that Weitzel held a position with each of the
two corporate entities and that he would have personal knowledge of the capacity in which
he acted when he signed the document in question. Weitzel's statement that he signed the
document on behalf of Reed Distributing supports his conclusion that the drafter mistakenly
put Petrofuels' name at the top of the document. Further, Weitzel stated that Petrofuels does
not own, operate, or maintain the underground storage tanks located at Honey Stop II, and
that Petrofuels has never entered into an oral or written agreement with any of the appellants. 
Thus, we find that Weitzel provided sufficient supporting facts to support his conclusory
statements; therefore, the trial court could consider them as summary judgment evidence. 
See Rizkallah, 952 S.W.2d at 587. 

 Next, we consider appellants' argument that Weitzel's affidavit is improper summary
judgment evidence because it contains self-serving statements made by an interested party. 
"Summary judgment based on the uncontroverted affidavit of an interested witness is proper
if the evidence is clear, positive, direct, otherwise credible, free from contradictions and
inconsistencies, and could have been readily controverted." Trico Techs. Corp. v. Montiel,
949 S.W.2d 308, 310 (Tex. 1997); see also Tex. R. Civ. P. 166a(c). "'Could have been
readily controverted' does not mean that the summary judgment evidence could have been
easily and conveniently rebutted, but rather indicates that the testimony could have been
effectively countered by opposing evidence." Id. 

 Appellants contend that Weitzel's affidavit contradicts his deposition testimony and
that it could not be readily controverted. In particular, appellants assert that his affidavit's
claim that the drafter of the document made an error conflicts with his deposition testimony,
from which the "factual conclusion of drafter error[] was conspicuously absent. . . ." 

 A comparison of Weitzel's affidavit and the deposition does not reveal any conflict. 
Weitzel testified in deposition and swore in his affidavit that he signed the document on
behalf of Reed Distributing. Appellants do not claim that counsel asked Weitzel at his
deposition about who drafted the agreement or why there was a conflict between the heading
of the document and the text and signature lines. The record does not support appellant's
assertion that Weitzel's statements were inconsistent. 

 Further, we note that Weitzel's deposition provides facts that support the trial court's
decision to grant Petrofuels' motion for summary judgment. Weitzel testified that Reed
Distributing Company was the lessee under the questioned agreement, that he signed the
instrument on behalf of Reed Distributing Company, and that he did not sign the agreement
on behalf of Petrofuels. Moreover, by conducting additional discovery, appellants could
have sought to controvert Weitzel's claim of drafter error. See Montiel, 949 S.W.2d at 310. 
Nothing in the record shows that appellants sought discovery after they were served with
Weitzel's affidavit. On this record, we conclude that the "interested witness" rule does not
render Weitzel's affidavit unreliable summary judgment evidence. We overrule issue one.

Joint Enterprise


 In issue two, appellants maintain a genuine issue of material fact exists about whether
Petrofuels and Valley Star were engaged in a joint enterprise. A joint enterprise exists only
if the parties involved have (1) either an express or implied agreement regarding the
enterprise among the members of the group, (2) a common purpose for the group to be
carried out by the parties, (3) a community of pecuniary interest in the common purpose
among the members of the group, and (4) an equal right to direct the enterprise and control
it. See Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 613-15 (Tex. 2000). Petrofuels
contends that as a matter of law, Petrofuels and Valley Star have no community of pecuniary
interest in a common purpose. We agree.

 In 2003, the Texas Supreme Court clarified the "community of pecuniary interest"
requirement. See St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 527-28 (Tex. 2003). In Wolff,
the plaintiffs sued the hospital for a resident's negligent treatment of a patient. Id. at 517. 
The negligence allegedly occurred while the hospital's resident received training at a
different hospital and was under the immediate supervision of another medical institution's
agent. Id. The Wolff Court held that the trial court's jury charge misstated the "community
of pecuniary interest" requirement by using the language "common business or pecuniary
interest." Id. at 529. The Court concluded that "whether parties have a 'common business
or pecuniary interest' (as the court's charge inquired) is not the same as whether they have
a 'community of pecuniary interest,' as required by Shoemaker and the Restatement." (2) Id.
at 528. The Court found that the plaintiff failed to establish a "community of pecuniary
interest" necessary to find the hospital liable under a joint enterprise theory. Id. at 534. The
Court specifically noted there was no evidence that the defendant hospital and the other
medical institution shared any income with each other from the operation of the residency
program. (3) Id. at 531, 534. 

 As the Wolff Court explained: 

 Parties to an agreement may have a "common business interest," "a
common pecuniary interest," or both, despite lacking a community of
pecuniary interest in the purpose of their agreement. For example, both a
franchisor and its franchisee may be said to have a common business and
pecuniary interest in the retail marketing or sales of the franchised product or
service. The franchisee benefits from receiving the income and any resulting
profits generated by its sales and by the market value of his or her franchise
resulting from its profitability. The franchisor benefits by receiving royalty
payments from its franchisee based on those sales and by the enhanced value
accruing to its franchise opportunities resulting from the financial success of
the existing franchises.


 Similarly, wholesalers and retailers may also be said to have a common
business or pecuniary interest in the retail marketing and sales of their
products. Without retail demand for the product they distribute, neither the
wholesaler nor the retailer will stay in business very long. And the same could
also be said of a retailer's supplier--both the baker and the owner of a hot dog
stand benefit financially from the latter's hot dog sales--although the baker's
benefit is indirect.


 However, a franchisor, wholesaler, or supplier usually does not have a
"community of pecuniary interest" in the retail sales of its respective
franchisees, retailers, or customers. Although the former entities stand to
benefit financially from the successful downstream marketing of their goods
or services, their interests in those activities are not held in "community" with
the members of the latter group because they are not shared "without special
or distinguishing characteristics."


Id. at 527-28 (citing Ely v. Gen. Motors Corp., 927 S.W.2d 774, 779 (Tex. App.-Texarkana
1996, writ denied) ("When one party is selling vehicles wholesale to another to sell retail,
there is not a pecuniary interest in a common purpose.")).

 In this case, Petrofuels' summary judgment evidence established that it had a
wholesale relationship with Valley Star. At his deposition, Weitzel testified that Petrofuels
sold fuel to Valley Star and that Valley Star retailed the fuel through a consignment
agreement with appellants. Further, Weitzel testified that Valley Star paid Petrofuels for the
fuel Valley Star received. Valley Star then collected money from appellants for their retail
sale of the fuel and paid appellants a commission based upon sales. In his affidavit, Weitzel
stated that Petrofuels sold fuel on a wholesale basis to Valley Star. 

 Petrofuels' summary judgment evidence negated the "community of pecuniary
interest" required to show that two parties are engaged in a joint enterprise. See Ely, 927
S.W.2d at 779. Thus, the summary judgment burden shifted to appellants to present
controverting evidence. See Huckabee, 19 S.W.3d at 420.

 Appellants argue that the existence of common owners and officers is evidence
sufficient to create a fact issue under a theory of "joint enterprise." We disagree and "reject 
the mere existence of common owners, officers, and employees as proof of community of
pecuniary interest." Omega Contracting, Inc. v. Torres, 191 S.W.3d 828, 850 (Tex.
App.-Fort Worth 2006, no pet.). "To hold otherwise would tend to subject companies to
joint venture liability whenever they shared an employee, an officer, or even a shareholder." 
Id.

 Finally, appellants contend that the 1999 document signed by Weitzel shows the
existence of "joint enterprise" between Petrofuels and Valley Star. While the instrument's
heading refers to Petrofuels, the heading is not controlling. "No single provision taken alone
will be given controlling effect; rather, all the provisions must be considered with reference
to the whole instrument." SAS Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005)
(quoting Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) and construing a contract). Most
importantly, appellants do not explain how the 1999 document is relevant to proving that
Valley Star and Petrofuels shared their respective revenues with the other. See Wolff, 94
S.W.3d at 531, 534. Further, the summary judgment evidence showed that Weitzel signed
the 1999 document in his capacity as an officer for Reed Distributing Company, Valley Star's
predecessor. 

 In summary, Petrofuels presented sufficient evidence to shift the burden of proof on
its joint enterprise theory to appellants, and appellants, in their response, failed to
demonstrate that a genuine issue of material fact existed regarding whether Petrofuels and
Valley Star had a community of pecuniary interest. Thus, we overrule issue two and affirm
the trial court's judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice 


Submitted on June 28, 2007

Opinion Delivered October 11, 2007

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Valley Star settled with the appellants and is not a party on appeal. 
2. See Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 16-17 (Tex. 1974); Restatement
(Second) of Torts § 491 cmt. c (1965). 
3. The hospital received Medicare funds based on the number of residents in the
program, but no evidence shows it shared this money with the other medical institution. See
St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 531 (Tex. 2003). Further, the hospital and
institution did not share any income generated from the operation of the residency program. 
Id. at 534. Instead, the institution billed for the residents' services and kept all of the
revenue. Id.