DOUBLETREE HOTELS CORPORA-
TION and Doubletree Club Hotel
Systems, Appellants,

v.

Stephen PERSON, Appellee.

No. 13–01–169–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 11, 2003.

Lori M. Cliffe, Haynes & Boone, Ricardo G. Cedillo, Les J. Strieber, III, David S. Angulo, Davis, Cedillo & Mendoza, Ryan G. Anderson, San Antonio, Jose E. Garcia, Garcia, Villarreal & Karam, McAllen, for appellants.

Chris A. Brisack, Neil E. Norquest, Norquest & Brisack, LLP, Israel Ramon, Jr., Law Office of Israel Ramon, Jr., McAllen, for appellee.

Before Justices YAÑEZ, CASTILLO, and DORSEY.[1]

## OPINION ON REHEARING

Opinion by Justice YAÑEZ.

In our original opinion in this case, we reversed and rendered the trial court's default judgment in favor of Stephen Person, appellant. *See Hotel Sys. v. Person,* No. 13–01–169–CV, 2003 WL 21666145, 2003 Tex.App. LEXIS 6207 (Tex.App.-Corpus Christi July 17, 2003, no pet. h.). Person filed a motion for rehearing, which we now grant. In addition, we withdraw our opinion and judgment of July 17, 2003, and substitute the following in its place.

Appellants Doubletree Hotels Corporation ("the Corporation") and Doubletree Club Hotel Systems ("the Club") bring this appeal from a negligence suit that resulted in a default judgment for Stephen Person in the amount $5,290,095. We now reverse and remand.

## Background

The underlying lawsuit arose from injuries Person allegedly suffered at a McAllen hotel when he stepped off an elevator and fell. The elevator failed to fully descend all the way to the lobby, and its doors opened when the floor of the elevator was higher than the lobby floor. The Club had a franchise agreement ("the Agreement") with the hotel's owner/operator, Soza, Inc. ("Soza"). The Corporation

---

1. Retired Justice J. Bonner Dorsey, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998). However, Justice Dorsey did not participate in this decision because his assignment to this Court expired on August 31, 2003.

is a separate entity and had no agreement with Soza.

On February 12, 1997, Person filed his first amended petition in which he alleged negligence by several entities, including an elevator maintenance company, Soza, the Club and the Corporation. Person settled with Soza and the elevator maintenance company, for a total of $97,500. The Club and the Corporation, purportedly relying on the Agreement, allege that they did not file an answer because they assumed Soza's counsel was also handling their defense and would file an answer on their behalf.

On September 21, 2000, a default judgment hearing on liability was held and the trial court granted an interlocutory default judgment against both the Club and the Corporation on liability only. On September 29, a damages hearing was held. At that hearing's conclusion, the trial court entered a final default judgment vacating the interlocutory default judgment, reconfirming the Club and the Corporation's liability, and awarding Person damages. On January 16, 2001, the Club and the Corporation filed a motion for new trial and a motion to modify the judgment. The trial court allowed the motions to be overruled by operation of law. This appeal ensued.

Person concedes, on the current record, he has not shown that the Corporation owed him any duty. Thus, the analysis will focus on the Club.

### Standard of Review

■■■ "The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Real-*

ty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.1995). "The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort." *Id.* "The existence of duty is a question of law for the [trial] court to decide from the facts surrounding the occurrence in question." *Id.* When the existence of a legal duty is called into question, the reviewing court performs a de novo review to determine from the facts of the case if a duty arose. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994); *see City of McAllen v. De La Garza,* 898 S.W.2d 809, 810 (Tex.1995).

### Applicable Law

#### A. Default Judgment

■■■ Generally, "a judgment taken by default admits all allegations of fact set out in the petition, except for the amount of damages." *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex.1984). However, where a defendant fails to file an answer and no liability exists against him as a matter of law on the facts alleged by the plaintiff, then the fact that he has defaulted by failing to file an answer cannot create liability. *See First Dallas Petroleum, Inc. v. Hawkins,* 727 S.W.2d 640, 645 (Tex.App.-Dallas 1987, no writ) (citing *Morales v. Dalworth,* 698 S.W.2d 772, 775 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.)).[2]

#### B. Duty

The Club offers persuasive case law that examines the franchisor/franchisee relationship and outlines the duty owed by franchisors to third parties on franchise

---

2. We acknowledge that these two cases deal with writs of error, now known as restricted appeals, rather than a direct appeal, as this case presents. Both direct appeals and restricted appeals are procedural devices used to directly attack default judgments. *Glunz v. Hernandez,* 908 S.W.2d 253, 255 n. 3 (Tex. App.-San Antonio 1995, writ denied). As such, we conclude the distinction does not affect our analysis of this case.

premises. In these situations, injured third parties (Person) often accuse the franchisor (the Club) of negligence on the theory that the franchisor maintains an agency relationship with the franchisee (Soza), who is the actual owner of the franchise premises (the hotel). A review of these cases reveals that the vicarious liability of a franchisor in situations regarding negligence on the premises of franchise property is limited to those franchisors that maintain specific control of the activity concerning which negligence is charged. *Risner v. McDonald's Corp.*, 18 S.W.3d 903, 906–07 (Tex.App.-Beaumont 2000, pet. ref'd); *see Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 684–87 (Tex.App.-Fort Worth 1996, no writ); *Ely v. General Motors Corp.*, 927 S.W.2d 774, 777–78 (Tex.App.-Texarkana 1996, writ ref'd); *O'Bryant v. Century 21 South Central States*, 899 S.W.2d 270, 271–72 (Tex.App.-Houston [14th Dist.] 1995, no pet.); *see also Siegler*, 899 S.W.2d at 199; *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21–23 (Tex.1993). According to this principle, in order to hold the Club liable for the elevator defect we must conclude that the Club had control over the elevators at the hotel.

### Analysis

In his first amended petition, Person alleged the Club was negligent by failing to: (1) retain a competent professional or consulting engineering firm to inspect the condition of the elevators, the machine room, and related elevator equipment to determine what repairs and improvements needed to be made before Soza could continue as a franchisee; (2) require Soza to make needed repairs and improvements to elevator machinery; and (3) discover the comments, suggestions, and recommendations of the elevator maintenance company concerning repairs to the elevator machinery. At the interlocutory default judgment hearing, Person offered, and the trial court admitted, two citations and one certificate of service as evidence. At the final default judgment hearing, Person testified and had several documents admitted as evidence, most of which related to his injury.

■ By several points of error, the Club challenges the trial court's entry of final default judgment for Person in his negligence case. The Club contends it did not have control over the hotel's elevators. The Club alleges that it only licensed the use of the "Doubletree" name to Soza and, in return, asked that Soza respect and follow the aesthetic and service standards that consumers associate with the name. The Club admits that the Agreement allowed the Club to inspect the hotel to ensure that standards were being maintained, but the Club asserts the Agreement did not grant it control over day-to-day operations, safety, or security.

The Agreement confirms the Club's assessment. It states, in relevant parts:

Neither Franchisor's review or approval of any plans, layouts, specifications or designs, nor any inspections of the Hotel conducted by Franchisor during or after completion of the conversion shall constitute any express or implied undertaking or representation by Franchisor that the same comply with any building, life safety, environmental or other codes imposed by any governmental authority or that they comply with acceptable architectural or engineering standards. Franchisor's specification, review or approval of any furniture, fixtures, equipment or other item shall not constitute a warranty, express or implied, as to such time and Franchisor shall not have any liability or responsibility with respect to the lack of suitability of, or defects in, any product or building component. . . .

All of the obligations of Franchisor hereunder are to Franchisee and Franchisee's assigns, and no other party is entitled to rely on, enforce, or obtain relief for the breach of such obligations, either directly or indirectly, by subrogation or otherwise. . . .

Franchisee shall maintain the Hotel in accordance with the highest standards of repair and condition. . . . In connection therewith, Franchisee shall make additions, alterations, repairs and replacements thereto as may be required for that purpose.

The Agreement also expressly states that Soza is an independent contractor and no agency relationship exists between the Club and Soza. Because the Agreement does not assign specific control of the elevators to the Club, we hold that the Agreement creates no legal duty for the Club, as franchisor, to protect Person from elevator defects on the franchise premises.

■ In sum, the Agreement establishes an independent contractor relationship rather than an agency relationship and does not grant control over the details of the contractor's (Soza's) work. As such, in order to otherwise establish the duty element, Person must produce evidence to show that, despite the Agreement's terms, the true relationship between Soza and the Club gave the alleged principal (the Club) a right of control. *See Ely*, 927 S.W.2d at 777–78 (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 592 (Tex.1964)); *Risner*, 18 S.W.3d at 907.

■ In an attempt to demonstrate the Club's right of control over elevators at the hotel, Person offers purported examples of the Club's actual control. Person points to letters from the Texas Department of Licensing and Regulation that indicate that the elevator in question should have been placed out of service until repaired and tested. However, these letters are addressed to a Ms. Kina Mancilla at the franchise property, the hotel, and not to the Club. Person is not able to show that the Club received the letters or that Ms. Kina Mancilla is an agent of the Club. These letters better demonstrate Soza's control over the elevators, as they were mailed to the hotel site owned and operated by Soza and not to the Club or an agent of the Club.

■ Person also points to the Club's elevator inspection reports in an attempt to show the Club's amount of control. The report states, in a pertinent note, "The owners will have an evaluation done to determine what repairs are needed to put the elevators mechanically up to standard." Again, this better demonstrates Soza's responsibility for the elevators than the Club's, since Soza was the hotel's owner. On its face, the note from the report shows that the Club had put Soza in charge of following up on the condition of the elevators and bringing them up to required standards. Consequently, neither the letters nor the report show that the Club specifically controlled the elevators. Thus, Person has not yet shown that the Club had a right of control, outside of the Agreement.

■ After reviewing this case, we conclude that Person has not established that the Club retained control over the elevators, either through the Agreement with Soza or otherwise. *See Risner*, 18 S.W.3d at 906–07; *Smith*, 928 S.W.2d at 687; *Ely*, 927 S.W.2d at 778; *O'Brant*, 899 S.W.2d at 271–72; *see also Siegler*, 899 S.W.2d at 199; *Tidwell*, 867 S.W.2d at 23. Even though the Club defaulted, the record before us does not show the existence of a duty owed to Person by the Club. A default cannot create liability where none exists as a matter of law. *See Madison*, 727 S.W.2d at 645; *Morales*, 698 S.W.2d at

775. The final default judgment cannot stand.

The judgment of the trial court is RE-VERSED. The case is REMANDED to the trial court with instructions to proceed in accordance with this opinion.