# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00537-CV

**Carol J. Calderoni, Appellant**

**v.**

**Moses Vasquez, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-05-001895, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a restricted appeal from a no-answer default judgment awarding unliquidated damages. Appellant Carol J. Calderoni, defendant below, brings three issues urging reversal of the judgment on the grounds that (1) the live petition of the plaintiff below, appellee Moses Vasquez, failed to state any cause of action that would establish her liability to him; (2) the record contains no evidence that would support the unliquidated damages award; and (3) Vasquez failed to comply with the affidavit requirements of the Servicemembers Civil Relief Act before taking the default. We will reverse the judgment in its entirety and remand.

## BACKGROUND

We take our summary of the underlying facts from Vasquez's live petition, taken as true in light of Calderoni's default. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). Vasquez owned four contiguous lots in South Austin. His residence was located on

the two lots in the middle (6 and 7), while the outer two lots (5 and 8) were largely unimproved. At relevant times, Vasquez "was 81 years old, in poor health," had "failing eyesight," and "questionable mental acuity" to such an extent that he later became the subject of a guardianship proceeding in the Travis County probate court.

In April 2005, Vasquez was approached by two individuals—Cedrick E. Loera, with whom Vasquez "had a close and long term relationship," and Joseph Calderoni, a licensed real-estate broker who employed Loera, and whom Loera "brought by to meet [Vasquez] in order to discuss the sale of [Vasquez's] real estate." While Vasquez did not desire to sell his house, he agreed to sell the two outer lots (5 and 8) to Joseph for $120,000 each.[1] Joseph undertook to draft what Vasquez thought would be "the necessary paperwork" to effectuate that transaction.

As it turned out, Joseph drafted, and Vasquez executed, documents that not only transferred the two outer lots Vasquez had agreed to sell, but also the two middle lots (6 and 7), along with a ten-year lease of the house that would terminate with Vasquez's death. In exchange for lots 6 and 7, Joseph gave Vasquez a note for $200,000—which Vasquez contends is a fraction of its fair market value—but ultimately deeded those lots back to Vasquez without making any payments. As for the other lots, Joseph paid Vasquez $40,000 for lot 5 and $45,000 for lot 8, far less than the $120,000 each to which they had agreed. Joseph deeded lot 8 to himself, but deeded lot 5 to his mother, Carol Calderoni, appellant here.

---

[1] We use Joseph Calderoni's first name to distinguish him from his mother, appellant Carol Calderoni.

Vasquez filed suit in May 2005, initially asserting claims solely against Joseph. In March 2006, Vasquez filed a second amended petition joining Loera and Calderoni as co-defendants. Vasquez sought money damages, including sums representing "the difference between what Defendants paid Plaintiff for the property and what the property is worth," as well as exemplary damages, attorney's fees, and rescission of the "fraudulent sale."

A week later, Vasquez non-suited his claims against Joseph and Loera, leaving Calderoni as the sole defendant. Though Calderoni was served with citation, she never filed an answer. The case remained inactive for approximately five years. In the interim, a guardian was appointed for Vasquez, who filed a notice of appearance in the case. On April 6, 2011, Vasquez, through his guardian, obtained a default judgment against Calderoni awarding him $75,000, a sum explicitly "representing the amount by which the sale price agreed by Plaintiff for the sale of lot 5 exceeded the amount actually paid to Plaintiff for such lot." In August of that year, Calderoni brought this restricted appeal.

**ANALYSIS**

A restricted appeal is a type of direct attack on a default judgment. *See* Tex. R. App. P. 30; *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 943 (Tex. 1991). As the party filing a restricted appeal, Calderoni must show that: (1) she brought the appeal within six months after the trial court signed the judgment; (2) she was a party to the suit; (3) she did not participate in the hearing that resulted in the complained-of judgment and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent from the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *Alexander*

3

*v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004).  Only the fourth element, whether error is apparent from the face of the record, is in dispute here.

The record, for purposes of a restricted appeal, consists of the clerk's record and the reporter's record if one was made, and also includes any evidence presented to the trial court before final judgment.  *See Norman Commc'ns v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam); *General Elec.*, 811 S.W.2d at 944 ("The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a [restricted appeal] proceeding.").  Error must be apparent from the face of the record, not inferred from the record.  *Gold v. Gold*, 145 S.W.3d 212, 213 (Tex. 2005) (per curiam).  The scope of our review is the same as in ordinary appeals; that is, we review the entire case.  *Norman*, 955 S.W.2d at 270.  This includes evidentiary-sufficiency claims.  *Id*.

A plaintiff may take a default judgment against a defendant if the defendant has not previously answered, as long as the citation and return of service have been on file with the clerk for 10 days.  Tex. R. Civ. P. 107, 239.  A no-answer default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court's jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face.  *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988).  When a no-answer default judgment is rendered, the defendant's liability for all causes of action pleaded is conclusively established and all allegations of fact set forth in the petition are deemed admitted, except the amount of unliquidated damages.  *Lucas v. Clark*, 347 S.W.3d 800, 803 (Tex. App.—Austin 2011, pet. denied) (citing *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922,

4

930 (Tex. 2009) (per curiam)). Thus, if the facts set out in the petition allege a cause of action, the default judgment conclusively establishes the defendant's liability. *Morgan*, 675 S.W.2d at 731. However, when a defendant fails to file an answer and no liability exists against him as a matter of law on the facts alleged by the plaintiff, then the fact that he has defaulted by failing to file an answer cannot create liability. *Doubletree Hotels Corp. v. Person*, 122 S.W.3d 917, 919 (Tex. App.—Corpus Christi 2003, no pet.).

In her first issue, Calderoni urges that the district court erred in rendering a default judgment not only imposing liability, but also awarding $75,000 in unliquidated damages. She asserts that the award is not supported by legally or factually sufficient evidence and that, indeed, the record is devoid of any testimony or other evidence regarding damages. Vasquez concedes this issue and that the damages award must be reversed, although he emphasizes that the error would not impact the portion of the judgment imposing liability against Calderoni. We agree with the parties that, at a minimum, the damages award must be set aside, and sustain Calderoni's first issue.

In her second issue, Calderoni asserts that Vasquez's pleadings are insufficient to support the default judgment as to liability. In determining whether a cause of action was pled, the court must be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty the elements of the plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979). Mere formalities, minor defects, and technical insufficiencies will not invalidate a default judgment where the petition states a cause of action and gives "fair notice" to the opposing

5

party of the relief sought. *Id*. When determining whether a pleading properly includes an allegation, we must look at the pleading from the perspective of the person against whom the pleading is made. *Wilson v. Bloys*, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied) (citing *Erisman v. Thompson*, 167 S.W.2d 731, 733 (Tex. 1943)). The purpose of a pleading is to provide the defendant with fair notice of the cause of action and character of evidence that will be raised at trial. *Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 725 (Tex. 1982); *Caruso v. Krieger*, 698 S.W.2d 760, 762 (Tex. App.—Austin 1985, no writ). This has the intended effect of defining the issues that will be heard. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) Furthermore, when determining whether a cause of action has been pled, we must be able to determine the elements of the cause of action from the pleadings alone. *Sellers*, 651 S.W.2d at 725. However, a petition is sufficient if a cause of action may be reasonably inferred from what is specifically stated in the petition, even if an element of the action is not specifically alleged. *Wal-Mart Stores, Inc. v. Its*, 21 S.W.3d 456, 470-71 (Tex. App.—Austin 2000, pet. denied).

We have previously summarized the factual allegations in Vasquez's live petition. They focused exclusively on the conduct of Joseph, aided by Loera, in allegedly seeking out Vasquez and tricking him into selling property he never intended to sell and selling property for a fraction of its fair market value. Joseph and Loera were specifically identified as the actors and wrongdoers. The sole mention of Calderoni appeared in a paragraph discussing the transactions involving lots 5 and 8. After an allegation that "Defendant Joseph Calderoni, with the aid of Defendant Loera, also separately obtained from Plaintiff deeds to lots 5 and 8, for which he paid only $40,000.00 and

6

$45,000.00 respectively, about a third of their market value," Vasquez added, "Lot 8 Joseph Calderoni had deeded to himself, and Lot 5 to his mother, Carol Calderoni."

After pleading these factual allegations, Vasquez purported to plead the elements of three sets of liability theories: (1) debt and violations of chapter 1101 of the occupations code, which were pled solely against Loera and Joseph respectively; (2) theories of common-law fraud, statutory fraud, and liability under the Texas Theft Liability Act predicated on misrepresentations and deception by unspecified "Defendants" in inducing Vasquez to enter into the transaction; and (3) a theory of "conspiracy." In his pleadings regarding conspiracy, Vasquez complained that "Defendant Cedrick E. Loera conspired with Defendant Joseph Calderoni to commit this fraud on Plaintiff," in "obtain[ing] the real property . . . from Plaintiff in a grossly unfair manner," and in breaching a fiduciary duty Loera was alleged to owe to Vasquez. Then, in the sole explicit reference to appellant anywhere in his pleadings of liability theories, Vasquez added, "Defendant Carol Calderoni benefitted from these unfair acts by obtaining lot 5 at a price far below market value."[2] None of these allegations stated a cause of action against Calderoni.

The elements of a civil conspiracy include (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 604-05 (Tex. App.—Austin 2008, no pet.) (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Proof of civil conspiracy requires proof of "damages as the proximate result of

---

[2] At the conclusion of Vasquez's "conspiracy" theory, he alleged also that Loera had obtained large sums of money from him "play[ing] upon the intimate relationship he had with Plaintiff," then refusing to repay them.

7

the conspiracy." *Id.* The "gist of a civil conspiracy" is the injury that is intended to be caused. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968). One "cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." *Id*. at 857. Vasquez failed to allege a meeting of the minds among Calderoni, Joseph, and Loera as to either a wrongful act or resulting harm. *See id.* (reversing court of appeals and affirming trial court's take-nothing judgment when evidence did not show knowledge or intent to participate in any wrongdoing). Vasquez's sole allegation against Calderoni—that Calderoni received property from Joseph—would not in itself have been unlawful or proof of Calderoni's involvement in any unlawful acts to bring about that result. Vasquez did not state a cause of action against Calderoni for conspiracy.

For similar reasons, Vasquez's reliance on the proposition that "the partaking of benefits of a fraudulent transaction makes the participants principals and liable as such," is misplaced. *First State Bank of Miami v. Fatheree*, 847 S.W.2d 391, 396 (Tex. App.—Amarillo 1993, writ denied) (citing *Corpus Christi Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 202 (Tex. App.—San Antonio 1991, no writ)). In *Fatheree*, there was evidence that the plaintiff was actually involved in the fraudulent conduct. *Id*. at 397 (noting plaintiff's employee "clearly understood" and participated in the fraudulent scheme). Again, Vasquez alleged no actual involvement by Calderoni in any fraudulent acts by Joseph or Loera.

However, Vasquez suggests that it is enough that he pleaded the elements of common-law fraud, statutory fraud, and violations of the Theft Liability Act against unspecified "Defendants." We disagree. Vasquez alleges that "Defendants" committed common-law fraud

8

by "ma[king] a false representation . . . that [Joseph] Calderoni was purchasing only unimproved lots from Plaintiff when in addition Defendants actually had Plaintiff transfer to Defendant Joseph Calderoni his house [and] . . . also misrepresented the amount Plaintiff was being paid for his unimproved lots (5 and 8)," committed statutory fraud by "ma[king] false representations to him for the purpose of inducing him into this real estate transaction," and violated the theft liability act by "depriv[ing] Plaintiff of his property by deception" and without his "effective consent." Read in context with the specific factual allegations that preceded these pleadings, we disagree that these pleadings gave fair notice to Calderoni that Vasquez was asserting the liability theories against her, as opposed to her co-defendants.

In regard to Vasquez's allegations against "Defendants," *Quality Hardwoods, Inc. v. Midwest Hardwood Corp.* is instructive. No. 02-05-00311-CV, 2007 WL 6194114, at *7 (Tex. App.—Fort Worth June 28, 2007, no pet.) (mem. op.). In that case, Quality agreed to warehouse and sell Midwest's inventory to resolve a prior debt. *Id*. at *1. Quality's registered agent Timothy Mills took a portion of Midwest's inventory and used it to make cabinets he installed in the home he shared with his wife Diane Mills. *Id*. Eventually, Midwest sued Quality, Timothy Mills, and Diane Mills asserting theories of conversion, fraud, breach of fiduciary duty, and breach of contract. *Id*. at *2. Following entry of a default judgment against her, Diane Mills filed a restricted appeal challenging her liability. The court of appeals concluded that Midwest's petition stated a claim against Diane Mills for conversion because it included a factual allegation that Midwest's inventory was "used by Defendants Timothy S. Mills *and Diane Mills* personally to make and install cabinets in their home." *Id*. at *4. To the extent the petition lacked other conversion elements, the

9

court concluded they were not legally required. *Id.* However, the court of appeals held that the petition failed to sufficiently allege claims against Diane Mills for fraud, breach of fiduciary duty, or breach of contract. *Id.* at *6-7. The fraud claim contained only general allegations that "the Defendants willfully and fraudulently used or sold Plaintiff's hardwoods without authority or Plaintiff's knowledge." Diane Mills emphasized that the petition failed to allege that *she* made a false representation that *she* knew to be false. *Id.* at *7. The court of appeals concluded that Midwest's petition did not state a cause of action against Diane Mills for fraud and, consequently, that error was apparent on the face of the record. *Id.*

We are persuaded by the analysis in *Midwest*, which is consistent with the principle that pleadings must allege facts rather than conclusions. *See, e.g.*, *Village Square, Ltd. v. Barton*, 660 S.W.2d 556, 559 (Tex. Civ. App.—San Antonio 1983, writ ref'd n.r.e.) (reversing default judgment on DTPA claim when pleadings did "not in any way designate or state with particularity which acts or events were relied upon as a basis for liability" or "show that any act or acts of the defendants were a producing cause of an injury"); *C & H Transp. Co. v. Wright*, 396 S.W.2d 443, 446 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.) (reversing default judgment when allegations amounting to "purely legal conclusion, without facts in support thereof [were not] sufficient to support the judgment by default"); *see also Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 525 (Tex. App.—Austin 2010, no pet.) (in analogous context of reviewing whether pleadings were sufficient to invoke trial court's jurisdiction, observing that "bare conclusions . . . are not sufficient—the pleader must allege *facts*"); *Bloys*, 169 S.W.3d at 369 (holding default judgment for failure to pay note not predicated upon any findings of allegations of

10

fraud when petition lacked any references to fraud, misrepresentations, or similar conduct).  And, absent any specific allegation of wrongdoing against Calderoni, or even that she ever had contact or communications with Vasquez, Vasquez's general allegations that unspecified "Defendants" defrauded him are, as in *Midwest*, insufficient standing alone.

Vasquez also urges that a "totality of the circumstances" analysis of his pleadings yields the conclusion that those pleadings alleged fraud by Calderoni.  He argues that we applied such an analysis in *Vela v. Marywood*, 17 S.W.3d 750, 760-61 (Tex. App.—Austin 2000, pet. denied).  In *Vela*, a plaintiff mother raised the affirmative defense of fraud against a purported voluntary relinquishment of her parental rights.  *Id*. at 760.  While we acknowledged that fraud "is an elusive and shadowy term which has been defined in some cases as any cunning or artifice used to cheat or deceive another," the evidence before the court clearly demonstrated fraudulent conduct on the part of the defendant adoption agency.  *Id*.  Specifically, (1) the agency, because of its special relationship with the mother, owed a duty of complete disclosure; (2) the agency either made misrepresentations about the adoption process that were false or misleading or failed to disclose material facts; and (3) the mother was justified in relying on the agency's misrepresentations.  *Id*. at 761, 763-64.  On those facts, we held, the plaintiff could maintain an affirmative defense of fraud. *Vela* is inapposite in its posture and unhelpful to Vasquez on its facts.  Because Vasquez's petition lacks sufficient factual allegations to maintain a cause of action against Calderoni, we sustain Calderoni's second issue.

Calderoni suggests that the proper remedy for the defects in Vasquez's liability pleadings is rendition of judgment in her favor.  She invokes the principle that "incurable"

11

pleading defects warrant rendition because remand and an opportunity to amend would serve no legitimate purpose. *See Texas Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007) (dismissing claims when allowing respondent to plead additional facts would not cure jurisdictional defects). We disagree that Vasquez's pleadings reveal incurable defects, as opposed to the omission of factual allegations that, if they could be added in good faith, could cure the defects. Calderoni also appears to urge more broadly that rendition is the proper remedy without regard to whether the pleading defects are curable, citing a number of court of appeals decisions that reversed and rendered default judgments. We note that some of these decisions involved incurable pleading defects or evidence that negated essential elements of causes of action or damages, and are thus distinguishable. *See, e.g.*, *Davenport v. Scheble*, 201 S.W.3d 188, 197 (Tex. App.—Dallas 2006, pet. denied) (reversing exemplary damages award in default judgment premised on legally unviable fraud theory and rendering take-nothing judgment); *Texas Dep't of Pub. Safety v. Six*, 25 S.W.3d 368, 370 (Tex. App.—Fort Worth 2000, no pet.) (reversing and rendering default judgment when judicial admission in pleading made satisfaction of statutory conditions necessary to obtain relief impossible); *Rodriguez v. USS of Tex., Inc.*, No. 12-06-00398-CV, 2007 WL 2949643, at *3 (Tex. App.—Tyler Oct. 11, 2007, no pet.) (mem. op.) (reversing default judgment against alleged spouse for breach of contract and rendering take-nothing judgment when evidence showed contract; (1) did not purport to an agreement between plaintiff and alleged spouse; (2) did not mention alleged spouse anywhere in body of contract; and (3) did not contain alleged spouse's signature). In any event, we believe that the policies that the Texas Supreme Court has emphasized in *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992), and its recent

extension of *Heine* in *Dolgencorp*, 288 S.W.3d at 930, guide us similarly to opt for remand here given the "abbreviated and perfunctory" nature of default-judgment proceedings, *see id.*, at least in the absence of incurable pleading defects.

In her third and final issue, Calderoni seeks relief from the default judgment based on what she asserts was Vasquez's failure to comply with the the Servicemembers Civil Relief Act. 50 App. U.S.C.A. § 521 (West 2008) (formerly cited as 50 App. U.S.C.A. § 520) ("the Act"). Before a court may enter judgment, the Act requires a plaintiff to file an affidavit (1) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (2) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to make that determination. *Id*. § 521(b)(1). The Act provides a court with authority to set aside a judgment entered against active duty servicemembers. *Id*. § 521(g)(1). The Act explicitly limits relief to servicemembers during their "period of military service (or within 60 days after termination of or release from such military service)" and requires a showing that (1) the servicemember was materially affected by reason of that military service in making a defense to the action; and (2) the servicemember has a meritorious or legal defense to the action or some part of it. *Id*.

This Court long ago made clear that a "default judgment, taken without the affidavit or other requirements of [the Act], is not thereby rendered void, but merely voidable at the instance of *the service man upon proper showing of prejudice and injury*." *Mims Bros. v. N.A. James, Inc.*, 174 S.W.2d 276, 278 (Tex. Civ. App.—Austin 1943, writ ref'd) (emphasis added). Calderoni has not shown that she is an active duty member of the military service (or has left the

13

service within 60 days), nor has she made any attempt to make the required additional showing of prejudice and injury. *See Commercial Credit Corp. v. Smith*, 187 S.W.2d 363, 368 (Tex. 1945) (denying motion to reopen judgment when claimant offered no proof of prejudice or injury as required by the Act); *Hawkins v. Hawkins*, 999 S.W.2d 171, 174 (Tex. App.—Austin 1999, no pet.) (holding trial court did not abuse its discretion by refusing to set aside divorce decree based solely on failure to comply with the Act; "[b]ecause the protections of the Act are exclusively for the benefit of the serviceman, it is only upon his insistence that the judgment may be found to be invalid, and then only upon the proper showing of prejudice"). Nor has Calderoni suggested that any noncompliance with the Act would entitle her to rendition, as opposed to the remand to which we have already held her entitled. Accordingly, we overrule Calderoni's third issue.

## CONCLUSION

We hold there is error on the face of the record because Vasquez's petition does not contain sufficient factual allegations to state a cause of action against Calderoni, nor is there any evidence that could support an award of unliquidated damages if liability was established. We reverse the default judgment in its entirety and remand the cause for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed: June 26, 2012

14