**Opinion issued September 1, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01058-CV

———————————

**DEWBERRY FARM, LLC AND LARRY EMERSON, Appellants**

**V.**

**KIMBERLY ELIAS, AS NEXT FRIEND OF N.E., A MINOR, Appellee**

On Appeal from the 506th District Court
Waller County, Texas
Trial Court Case No. 17-02-24173

## MEMORANDUM OPINION

In this restricted appeal, appellants, Dewberry Farm, LLC (the "LLC") and Larry Emerson (collectively, "appellants"), challenge the trial court's default judgment in favor of appellee, Kimberly Elias, as next friend of N.E., a minor, in Elias's suit for negligence. In three issues, appellants contend that Elias's pleadings

failed to state a valid premises defect claim under Texas law, there is legally insufficient evidence to support the trial court's damages award, and the trial court erred in awarding pre-judgment interest on future damages.

We affirm in part and reverse and remand in part.

## Background

In her first amended petition, Elias alleged that on November 13, 2016, she took her minor daughter, N.E., to Dewberry Farm in Brookshire, Texas. Dewberry Farm is owned by Larry Emerson and operated by the LLC. While at Dewberry Farm, N.E. used a "zip line," but fell to the ground and was injured. According to Elias, N.E. was injured as a result of the "unreasonably dangerous condition believed to be improper and inadequate safety measures for the zip line activity."

Elias, as next friend of N.E., sued appellants for "negligence: premises liability." Elias alleged that she and N.E. were invitees of appellants and that the condition of the zip line was unreasonably dangerous because it was age-inappropriate and did not have a harness or safety net to prevent falls. According to Elias, appellants, as the owner and operator of Dewberry Farm, breached their duty to make the unreasonably dangerous condition safe by failing to provide adequate and proper safety measures for the zip line or to warn of its dangerous condition. Elias also alleged that appellants (1) failed to "adequately train [their] employees to properly manage the [Dewberry Farm] [p]remises to help prevent and

2

correct dangerous conditions which developed on the zip lines" and (2) failed to "adequately warn . . . of the ongoing operations on the [Dewberry Farm] [p]remises which gave rise to the danger in this case and failed to conduct those ongoing activities in a safe manner." Elias sought damages for past and future medical care expenses, past and future physical pain and mental anguish, past and future "physical impairment and/or disfigurement," and loss of wages and earning capacity. She also sought pre- and post-judgment interest and court costs.

Appellants were served with Elias's suit, but they did not file an answer.

About eleven months after filing suit and after appellants did not file an answer, Elias moved for a default judgment. The motion was set for submission without a hearing six months later. Appellants did not respond or otherwise participate in the default-judgment proceedings, even though Elias's motion for default judgment and the notice of submission were both served on appellants by certified mail, return receipt requested.

In support of her request for a default judgment, Elias attached to her motion her original and first amended petitions, written discovery requests, proof of service, and her own affidavit detailing the zip line accident and her requested damages. In her affidavit, Elias testified that the zip line at Dewberry Farm was "geared toward children." And N.E. "wanted to participate in the zip line activity, so she lined up for it. When it was her turn, she proceeded to use the zip line per its intended

purpose," which was to "hang onto the handles of a wheel-like device that slid down the zip line, all while dangling in the air." As N.E. "hung onto the zip line's handles and it swung to the other end, she fell off the zip line and onto the hard ground," fracturing her left tibia. Elias averred that the zip line did not "have a harness for the user," that a child user was "expected to hang onto the zip line with his or her bare hands and sheer strength," and that the ground below the zip line did not "have a safety net or other medium in which to break a minor child's fall and/or prevent serious injuries."

Elias further stated in her affidavit that N.E. had not fully recovered from her injuries. She indicated that, before her fall, N.E. "was a very active, fearless child who enjoyed playing sports," but after her tibia fracture, N.E. was "unable to participate in any sport activities, especially those requiring use of her legs and feet, and ha[d] become very fearful of falling." Elias stated that $3,417.85 in medical expenses had been paid or incurred and that additional medical care expenses were anticipated in the future. No affidavit concerning the reasonableness and necessity of the medical costs was submitted to the trial court. Instead, Elias requested in her own affidavit that the trial court award the following amounts: (1) $50,000 for past and future medical expenses; (2) $200,000 for past and future physical pain and mental anguish; (3) $100,000 for past and future "physical impairment and/or disfigurement"; and (4) $50,000 for past and future loss of earning capacity.

4

The trial court granted Elias's motion for default judgment against appellants and awarded Elias $400,000 in damages—the amount requested by Elias, plus pre- and post-judgment interest and costs. The judgment indicates, without further explanation, that $3,417.86—which is the amount of past medical expenses claimed in Elias's affidavit—is for "special damages" and $396,582.14 is for "general damages." Appellants did not file any post-judgment motions.

## Standard of Review

A restricted appeal is a direct attack on a default judgment. TEX. R. APP. P. 30; *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A restricted appeal must be (1) filed within six months after the trial court signs a judgment, (2) by a party to the suit, (3) who, either in person or through counsel, did not participate at trial or timely file any post-judgment motions, and (4) the complained-of error must be apparent from the face of the record. *See Alexander v. Lynda's Boutique,* 134 S.W.3d 845, 848 (Tex. 2004); *Invesco Inv. Servs., Inc. v. Fid. Deposit & Discount Bank*, 355 S.W.3d 257, 259 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Only the fourth element, whether error is apparent from the face of the record, is disputed here.

"The face of the record consists of all the papers on file in the appeal, including any reporter's record." *Invesco*, 355 S.W.3d at 259. When reviewing a restricted appeal, we may evaluate the face of the record for the legal sufficiency of

5

the evidence, including the evidence of unliquidated damages. *Id.* In conducting a legal-sufficiency review, we credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) a complete absence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822.

## Pleadings

In their first issue, appellants argue that the default judgment must be set aside because Elias pleaded only a premises defect claim, not a negligent activity claim, and as a matter of law, appellants had no duty to warn against the open and obvious hazards of a zip line.

To support of their argument, appellants direct the Court to case law instructing that a defendant's default by failing to answer cannot create liability when no liability exists as a matter of law on the facts alleged by the plaintiff. *See, e.g.*, *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988)

6

(default judgment is erroneous if "petition affirmatively discloses the invalidity of such claim"); *see also Doubletree Hotels Corp. v. Person*, 122 S.W.3d 917, 919 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (observing "where a defendant fails to file an answer and no liability exists against him as a matter of law on the facts alleged by the plaintiff, then the fact that he has defaulted by failing to file an answer cannot create liability"). Assuming appellants are correct that the only cause of action Elias pleaded was one for premises defect, we disagree that the face of the record affirmatively demonstrates the open and obvious nature of the alleged premises defect to allow for a no-duty determination as a matter of law.

A landowner's duty to an invitee, like N.E.,[1] is to exercise reasonable care to make the premises safe. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015); *see Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010) (noting landowner "is not an insurer of [a] visitor's safety"); *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) (observing premises liability is not strict liability). A landowner can satisfy this duty by eliminating an unreasonably dangerous condition or mitigating the condition so that it is no longer unreasonably dangerous. *Austin*, 465 S.W.3d at 202. A landowner can also satisfy the duty, in most cases, by providing an adequate warning of the danger. *Id.*

---

[1] Appellants do not dispute that N.E. was an invitee.

When an invitee is aware of a dangerous premises condition because the hazard is obvious, the condition will, in most cases, no longer pose an *unreasonable* risk in that the law presumes an invitee will take reasonable measures to protect against known risks. *Id.* at 203; *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Combined, these concepts present the general rule regarding a landowner's duty to an invitee, which is that a landowner must "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203.

A dangerous condition that an invitee reasonably should be aware of is one that is open and obvious. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412 (Tex. 2009). Defects that are open and obvious are outside the landowner's general duty to warn. *See Austin*, 465 S.W.3d at 203; *see also 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 912 (Tex. 2016) (no duty when premises condition is open and obvious). The no-duty circumstance of an open and obvious condition focuses on what would be reasonably observable to a person exercising ordinary care under an objective standard. *See Culotta v. Double Tree Hotels LLC*, No. 01-18-00267-CV, 2019 WL 2588103, at *3 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. denied) (mem. op.). For example, the Texas Supreme Court has stated that the danger of falling off the edge of an undamaged sidewalk was open

and obvious and therefore could not support a premises-liability claim. *Rosales*, 505 S.W.3d at 912.

Appellants urge us to follow *Kopplin v. City of Garland*, 869 S.W.2d 433 (Tex. App.—Dallas 1993, writ denied)—a case in which the Dallas appellate court held there was an open and obvious danger of falling from playground equipment. In *Kopplin*, the parents of a seven- or eight-year-old boy who fell from a "track ride" sued the playground owner on a premises-liability theory under the doctrine of attractive nuisance. 869 S.W.2d 433 at 441. There, the court of appeals rejected the theory, holding that summary judgment on that claim was proper because the "danger of falling from playground equipment such as the track ride . . . [was] open and obvious to even a child of [the boy's] age." *Id.*

The procedural posture of this restricted appeal necessarily informs our analysis of the duty issue. Unlike in *Kopplin*, we do not have the benefit of a fully developed summary-judgment record. Our review is limited to the face of the record, which in turn is limited to the allegations in Elias's pleadings and her affidavit testimony submitted with her motion for default judgment. *See Alexander*, 134 S.W.3d at 848; *Invesco*, 355 S.W.3d at 259. The clerk's record is not extensive, and the trial court rendered its default judgment by submission on the motion without an evidentiary hearing. Thus, although the *Kopplin* court considered evidence of the injured child's age, the observations of the child's

mother, and the condition of the playground equipment, including its height and the composition of the ground below it, in deciding whether the danger was open and obvious, the face of this record does not provide much in the way of context from which we could also make a matter-of-law determination of whether a duty was owed. *See Kopplin*, 869 S.W.2d at 437. The existence of a duty is a question of law for the Court to decide, but it must be determined from the facts surrounding the event in question. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Here, the face of the record does not permit a matter-of-law determination of the open and obvious nature of the zip line.

As to the condition of the zip line, the face of the record indicates only that the zip line included a "wheel-like device" with handles and did not have a harness or safety net. There are no other allegations to indicate what would be reasonably observable to a person exercising ordinary care under an objective standard. *See Culotta*, 2019 WL 22588103, at *3. For example, the face of the record does not reveal the height, length, or speed of the zip line; nor does it describe the ground underneath the zip line beyond Elias's allegation that it was "hard ground." There also is nothing to indicate the extent to which the zip line and its component parts were partially or fully visible. The record does not even reveal N.E.'s age, which is another point of distinction from *Kopplin*. *See Kopplin*, 869 S.W.2d at 441.

The limited scope of the face of this record also precludes us from applying the cases which appellants cite as representing a uniform jurisprudence that the lack of fall protection is an open and obvious hazard giving rise to no duty on the part of a landowner. Although the courts in those cases observed the alleged hazard of falling was open and obvious, no case was a restricted appeal and the facts giving rise to the alleged duty were more developed in the context of claims made by independent contractors or employees operating in a familiar work environment, not a child on a device with ill-defined characteristics given the limited record. *See, e.g.*, *Diaz v. D.R. Wright Enters., Inc.*, No. 05-17-00172-CV, 2018 WL 3484227, at *8 (Tex. App.—Dallas July 19, 2018, no pet.) (mem. op.) (considering whether duty was owed based on summary-judgment record in case where independent contractor fell from roof); *Arana v. K. Hovnanian Homes-DFW, LLC*, No. 05-17-00367-CV, 2018 WL 3017307, at *7 (Tex. App.—Dallas June 18, 2018, no pet.) (mem. op.) (considering whether duty was owed based on summary-judgment record in case where independent contractor fell from rafters); *Gomez v. Saratoga Homes*, 516 S.W.3d 226, 238 (Tex. App.—El Paso 2017, no pet.) (considering whether duty was owed based on summary-judgment record in case where painting contractor fell from roof); *Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 156 (Tex. App.—Dallas 2011, pet. denied) (considering whether duty was owed based on summary-judgment record in case where independent contractor fell from roof);

11

*Lopez v. Homebuilding Co., Inc.*, No. 01-04-00095-CV, 2005 WL 1606544, at *3 (Tex. App.—Houston [1st Dist.] July 7, 2005, no pet.) (mem. op.) (considering whether duty was owed based on summary-judgment record in case where which independent contractor fell from second story of house).

On the face of this record, we cannot conclude that the open and obvious nature of the unreasonably dangerous condition alleged is established as a matter of law. Thus, we hold that the trial court did not err in entering the default judgment.

We overrule appellant's first issue.

### Sufficiency of Evidence

In their second issue, appellants argue that the default judgment must be set aside because there is no evidence of any damages or of a causal connection between the zip line fall and the injuries allegedly sustained by N.E.

When, as here, a no-answer default judgment is rendered, the defendants' liability for all pleaded causes of action is conclusively established and all allegations of fact in the petition, except for the amount of unliquidated damages,[2] are deemed admitted. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.

---

[2] "Damages are unliquidated when they cannot be accurately calculated from the factual allegations in the petition or any written instruments in the record." *Sumah v. Rodriquez*, No. 01-15-00813-CV, 2016 WL 4055585, at *3 n.1 (Tex. App.—Houston [1st Dist.] July 28, 2016, no pet.) (mem. op.).

1984).  The court rendering a default judgment must hear evidence of unliquidated damages.  TEX. R. CIV. P. 243; *Morgan*, 675 S.W.2d at 731.  The plaintiff must prove by competent evidence the amount of unliquidated damages.  *Morgan*, 675 S.W.2d at 732; *Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Further, "[a]lthough a default judgment conclusively establishes [the] defendant[s'] liability, i.e., the 'causal nexus between the conduct of the defendant[s] and the event sued upon,' [the] 'defaulting defendant[s] do[] not admit that the event sued upon caused any of the plaintiff's alleged injuries.'" *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 530–31 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Morgan*, 675 S.W.2d at 732).  Proving that the event sued upon actually caused the plaintiff's alleged injuries "is part and parcel of proving the amount of damages to which the plaintiff is entitled." *Morgan*, 675 S.W.2d at 732.

Elias acknowledges on appeal that she had the burden to present competent evidence of the damages she alleged, and she concedes that she failed to meet that burden on past and future medical expenses and loss of earning capacity.  That is, she concedes that those damages are unrecoverable because there is no evidence to support them.  Nevertheless, she urges us to presume  that the trial court awarded amounts only for the damages supported by legally sufficient evidence—the physical pain, mental anguish, and physical impairment addressed in her affidavit—

13

because the judgment does not itemize damages and instead makes a lump-sum award of $400,000. According to Elias, the trial court's default judgment can be affirmed on that presumption because the trial court, as the fact finder, had discretion to award the entire judgment amount as compensation for N.E.'s physical pain, mental anguish, and physical impairment. *See, e.g.*, *Marquette Transp. Co. Gulf-Inland, LLC v. Jackson*, No. 01-10-01025-CV, 2012 WL 1454476, at *9 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, no pet.) (mem. op.) (discussing discretion of fact finder to determine amount of non-economic damages in personal injury cases).

Elias cites this Court's opinion in *Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.), as support for her position for affirmance of the damages award, but that case is distinguishable. *Fiske* was a personal injury case arising from a car accident in which the plaintiff claimed multiple elements of damages, including physical pain, mental anguish, and physical impairment. *Id.* at *2. Like the trial court's judgment in this case, the default judgment in *Fiske* included a lump-sum award that did not distinguish between the elements of damages. *Id.* In reviewing the legal and factual sufficiency of the evidence of physical impairment, the Court concluded that the testimony presented did "not amount to evidence of physical impairment because the alleged impairment did not extend beyond pain and suffering to the extent that it

14

produced a separate, substantial, or extremely disabling loss." *Id.* at *3. But the Court did not reverse the damages portion of the default judgment, reasoning that although "there [was] a lack of evidence regarding a particular type of damages, [there was] *no indication* that the trial court made any award for that type of damages." *Id.* at *4 (emphasis added). Thus, the Court assumed that the trial court disregarded those damages in making its award. *Id.* (emphasis added).

We cannot make the same assumption in this case because, unlike in *Fiske*, the face of the record indicates that the default judgment includes awards for admittedly unrecoverable damages. By rendering the default judgment for $400,000, the trial court awarded the full amount of damages requested by Elias in her affidavit. And although the trial court did not assign any element of damages a particular amount beyond designating $3,417.86 as "special damages" and $396,582.14 as "general damages," the amount the trial court awarded as "special damages" is the same as the amount of medical expenses that Elias averred had been paid or incurred as a result of N.E.'s injury. Thus, even though the trial court's single "general damages" award does not provide any means of distinguishing among the elements of damages, Elias's affidavit includes an itemized list of the specific amount she was requesting for each element of damages. The amount she requested included $50,000 for past and future medical expenses and $50,000 for past and future loss of earning capacity—both amounts that she now concedes are

15

unrecoverable due to a complete absence of competent evidence. The remainder of her request for the damages that she asserts are recoverable was $300,000— $200,000 to compensate for N.E.'s physical pain and mental anguish and $100,000 to compensate for N.E.'s physical impairment. An assumption that the trial court did not award *any* amount for unrecoverable medical expenses or loss of earning capacity would mean the trial court's damages award in its default judgment exceeds the amounts claimed by Elias by $100,000. The face of this record therefore compels a different result than in *Fiske*.

We find the reasoning of our sister court in *Whitaker* persuasive here. In that case, the defendant asserted that he was entitled to a new trial because the trial court's default judgment failed to distinguish between recoverable and nonrecoverable damages. *Whitaker*, 218 S.W.3d at 224. The appellate court agreed, explaining:

> [I]f a default judgment makes a single damage award based on more than one element and if there is no evidence to support the award as to one of the elements on which the award is based, then this court must reverse and remand as to the entire award, even though one of the other elements might be sufficient to support the award.

*Id.*; *see also Sumah v. Rodriquez*, No. 01-15-00813-CV, 2016 WL 4055585, at *3 n.1 (Tex. App.—Houston [1st Dist.] July 28, 2016, no pet.) (mem. op.) (reversing and remanding for new trial on damages where "single damages award [did] not provide any means of distinguishing among the four appellees and the categories of

damages they alleged"); *Thomas v. Martinez*, 217 S.W.3d 680, 684–85 (Tex. App.—Dallas 2007, pet. struck) (reversing and remanding for new trial on damages where there was no evidence of physical impairment and amounts could not be distinguished from other damages).

Because there is no dispute in this appeal that more than one element of damages is not supported by legally sufficient evidence and the trial court's default judgment does not provide any means of distinguishing among the categories of damages, we hold the trial court erred in awarding Elias damages in its default judgment. *See* TEX. R. APP. P. 44.1(b) (reversal as to all matters in controversy required if non-reversible and reversible cannot be fairly separated); *Whitaker*, 218 S.W.3d at 224–25; *Sumah*, 2016 WL 4055585, at *3; *see also Holt Atherton Indus., Inc.*, 835 S.W.2d at 86 (when appellate court sustains no evidence point after uncontested hearing on unliquidated damages following no-answer default judgment, appropriate disposition is to remand for trial on issue of unliquidated damages only, not liability).

We sustain appellant's second issue.[3]

---

[3] Having concluded that the trial court erred in awarding Elias damages in its default judgment, we do not reach appellants' assertion that there is no evidence of a causal connection between the zip line fall and the injuries allegedly sustained by N.E. because, even if we were to sustain that portion of appellants' issue, appellants would not be granted any greater relief. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) (remedy for legal-insufficiency point in context of default judgment is remand for new trial, not rendition of judgment, because

17

## Conclusion

We affirm the trial court's judgment as to liability. We reverse the portion of the trial court's judgment awarding Elias damages and remand for a new trial on damages.

Julie Countiss
Justice

Panel consists of Justices Goodman, Hightower, and Countiss.

---

evidence is "not fully developed"); *see also* TEX. R. APP. P. 47.1. We also do not reach appellants' third issue related to pre-judgment interest. *See* TEX. R. APP. P. 47.1.